



FILED

Oct 11 2018, 12:10 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 36S05-1711-JV-711

## B.T.E.,
*Appellant,*

—v—

## State of Indiana,
*Appellee.*

Argued: January 11, 2018 | Decided: October 11, 2018

Appeal from the Jackson Superior Court

The Honorable Bruce A. MacTavish, Judge

No. 36D02-1601-JD-3

On Petition to Transfer from the Indiana Court of Appeals

No. 36A05-1607-JV-1702

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices David, Massa, and Goff concur.

**Slaughter, Justice.**

For several months B.T.E., a juvenile, plotted to shoot up and blow up his high school, and he targeted two of his classmates to die. B.T.E. took several steps to implement his plot. The trial court adjudicated B.T.E. a juvenile delinquent on two counts, one of which is relevant here: attempted aggravated battery, a level 3 felony if committed by an adult.

We consider whether, under Indiana's criminal-attempt statute, B.T.E. took the required "substantial step" toward committing aggravated battery—or whether his actions were "mere preparation". After considering several factors, we hold there was sufficient evidence of the "substantial step" element and affirm the trial court's judgment.

## Factual and Procedural History

Appellant, B.T.E., was a sophomore at Seymour High School during the 2015-16 school year. During the fall semester, he began plotting an attack at his school in the spring semester of his senior year. He targeted two of his classmates: G.M., the object of B.T.E.'s unrequited affection; and J.R., a rival suitor. B.T.E. chose April 20, 2018, as the date of his planned attack—the anniversary of the 1999 massacre at Columbine High School in Colorado, a shooting spree during which 13 people were murdered, many more were injured, and the two student gunmen committed suicide.

In January 2016, a school resource officer at Seymour High School learned that B.T.E. had liked a Facebook page called "Columbine High School Massacre". The officer reported this information to the Seymour Police Department, which began its own investigation. During an interview, police told B.T.E. of the allegations against him, and he became visibly upset and teary-eyed. B.T.E. admitted talking to other students about possibly "shooting up the school". And he admitted having a crush on G.M. and a strong animus toward J.R., whom he thought G.M. preferred. Although B.T.E. acknowledged plotting with his friend and classmate, M.V., he claimed their scheme was just a long-running joke.

B.T.E. was arrested shortly afterward. The State charged B.T.E. with juvenile offenses that would be crimes if an adult committed them: attempted murder, attempted aggravated battery, conspiracy to commit murder, and conspiracy to commit aggravated battery.

At the juvenile-delinquency proceeding, the trial court admitted into evidence statements B.T.E. made to M.V. and other juveniles via Facebook chat. B.T.E. repeatedly expressed his wish to torture or kill J.R. and occasionally mentioned killing G.M., too. In exchanges with his friend and co-conspirator M.V., B.T.E. claimed he had "figured out how to make pipe bombs" and described the weapons he might use against J.R.

> B.T.E.: I could steal a knife … and kill [J.R.] with it and then take out as many people as possible.
>
> M.V.: Or you could buy a gun.
>
> . . . .
>
> B.T.E.: Or I could attempt to break into my dads [sic] gun safe so I wouldn't have to buy a weapon.

The Facebook chat logs also show B.T.E. solicited M.V. and a student from a different school, D.H., to assist with violent acts.

B.T.E. disclosed the date of his planned attack when he said in a Facebook chat, "four twenty eighteen (4/20/18). Some people will find out what the state of nothingness is like." B.T.E. told police he chose that particular date because it was the anniversary of the Columbine school massacre. When police asked B.T.E. about the significance of 2018, he responded that was his senior year and he had done a large amount of research on school massacres including the Columbine shooting and its perpetrators. The two Columbine student-gunmen were high-school seniors when they carried out their deadly attack.

The court also admitted into evidence a diagram B.T.E. made of one of the classrooms depicting the seating arrangement, marking the exits, and

indicating an "x" where one of his intended victims sat. And the trial court admitted B.T.E's "death note", which was to be read after B.T.E. died carrying out his plan. The trial court adjudicated B.T.E. a delinquent for attempted aggravated battery and conspiracy to commit aggravated battery but not for the other charges. The court sentenced B.T.E. to probation until his eighteenth birthday with a suspended commitment to the Indiana Department of Correction.

A divided Court of Appeals reversed the attempt finding but affirmed the conspiracy finding. *B.T.E. v. State*, 82 N.E.3d 267 (Ind. Ct. App. 2017). On the attempt issue, the majority held that "the State did not present evidence that B.T.E. completed a substantial step toward the commission of the crime of aggravated battery", *id.* at 279, because "the conduct . . . did not go beyond mere preparation and was not strongly corroborative of his stated intent", *id.* at 278. The dissent would have affirmed the trial court's findings on both the conspiracy and attempt charges. *Id.* at 282 (Bradford, J., concurring in part, dissenting in part).

We granted transfer, thus vacating the Court of Appeals' decision. We provide additional facts below.

## Standard of Review

When reviewing the sufficiency of the evidence in a juvenile adjudication, we do not reweigh the evidence or judge witness credibility. *K.S. v. State*, 849 N.E.2d 538, 543 (Ind. 2006) (citation omitted). We consider only the evidence favorable to the judgment and the reasonable inferences supporting it. *Id*. We will affirm a juvenile-delinquency adjudication if a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Moran v. State,* 622 N.E.2d 157, 159 (Ind. 1993) (citations omitted).

## Discussion and Decision

We hold there is sufficient evidence to support the trial court's adjudication of B.T.E. as a juvenile delinquent on the charge of attempted

aggravated battery. He engaged in conduct that would constitute a substantial step toward the crime of aggravated battery if committed by an adult. In addition, we summarily affirm the Court of Appeals' disposition of two other issues: that the State's continuance did not deprive B.T.E. of a speedy hearing under Indiana Code section 31-37-11-2, and that there was sufficient evidence to support the juvenile court's finding of conspiracy to commit aggravated battery.

## Sufficient evidence supports B.T.E.'s delinquency adjudication for attempted aggravated battery.

In Indiana, a person commits aggravated battery, a level 3 felony, if he "knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes: (1) serious permanent disfigurement; (2) protracted loss or impairment of the function of a bodily member or organ; or (3) the loss of a fetus". Ind. Code § 35-42-2-1.5. And a person commits the crime of attempt when, "acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime." *Id.* § 35-41-5-l(a). See also *State v. Van Cleave*, 674 N.E.2d 1293, 1304 (Ind. 1996). "Whether a substantial step has occurred is a question of fact, to be decided by the jury, based on the particular circumstances of each case." *State v. Lewis*, 429 N.E.2d 1110, 1116 (Ind. 1981) (citations omitted).

There is no doubt B.T.E. acted with the scienter required to commit aggravated battery. The object of his intentions, which included killing two of his classmates, qualifies as aggravated battery, and he does not argue otherwise. The only unresolved issue is whether B.T.E. took a "substantial step" toward committing that offense.

### A. We consider several factors when assessing whether the defendant took a "substantial step" toward completion of the underlying offense.

What qualifies as a "substantial step" under the attempt statute is not amenable to a hard-and-fast definition but is based on context. Whether a

step is substantial "must be determined from all the circumstances of each case". *Zickefoose v. State*, 270 Ind. 618, 622-23, 388 N.E.2d 507, 510 (1979). Although in rare circumstances a defendant's actions may be insubstantial as a matter of law, a step's substantiality is generally a fact question based on the totality of the circumstances. See *Lewis*, 429 N.E.2d at 1116.

The substantial-step "requirement is a minimal one, often defined as any 'overt act' in furtherance of the crime." *Van Cleave*, 674 N.E.2d at 1304. Still, the overt act must go "beyond mere preparation". *Jackson v. State*, 683 N.E.2d 560, 566 (Ind. 1997). But this requirement is not so strict that it forecloses some "preventive action by police and courts to stop the criminal effort at an earlier stage". *Zickefoose*, 270 Ind. at 622, 388 N.E.2d at 509. Instead, the attempt statute enables law enforcement to "minimiz[e] the risk of substantive harm without providing immunity for the offender." *Id.* We focus on "the substantial step that the defendant has completed, not on what was left undone." 270 Ind. at 623, 388 N.E.2d at 510.

Renowned jurists have long struggled with where to draw the line between mere planning and preparation, which are insufficient to establish the crime of attempt, and a substantial step, which is sufficient. As Judge Hand observed, "The decisions are too numerous to cite, and would not help much anyway, for there is, and obviously can be, no definite line" between preparation and attempt. *United States v. Coplon*, 185 F.2d 629, 633 (2d Cir. 1950).

Like Judge Hand, we are unable to capture the difference between mere preparation and a substantial step in a pithy, bright-line rule. Rather than pronounce a clear delineation, we can only describe and apply the relevant criteria. Of necessity, we balance several factors:

(1) whether the defendant's acts strongly corroborate his criminal intent;

(2) the severity of the charged crime;

(3) proximity to the underlying crime;

(4) the examples listed in Model Penal Code section 5.01(2); and

(5) whether the defendant's multiple acts, viewed together, indicate he attempted a crime.

We trust that these factors and their application here will, in true common-law fashion, add incrementally to the tapestry of decisional law. At all times, however, we proceed cautiously to ensure that prosecutors and police, in discharging their duty to snuff out serious threats to public safety, do not infringe upon protected activity, particularly freedom of conscience and expression. Our criminal law does not punish evil thoughts. A guilty mind, by itself, does not subject the actor to criminal liability. Such liability attaches only to those with a guilty mind who also perpetrate a wrongful deed.

### 1. Strong corroboration

Since the enactment of Indiana's modern attempt statute, we have said that the defendant's conduct, to qualify as a substantial step, "must be strongly corroborative of the firmness of the defendant's criminal intent." *Zickefoose*, 270 Ind. at 623, 388 N.E.2d at 510. The Model Penal Code's authors found this factor essential, reasoning "that if the defendant manifests a purpose to engage in the type of conduct or to cause the type of result that is forbidden by the criminal law, he has sufficiently exhibited his dangerousness to justify the imposition of criminal sanctions." Am. Law Inst., *Model Penal Code and Commentaries Part I* 303 (1985). According to one academic, "The actus reus of an attempt to commit a specific crime is constituted when the accused person does an act which is a step towards the commission of the specific crime, and the doing of such act can have no other purpose than the commission of that specific crime." Wayne R. LaFave, *Substantive Criminal Law Vol. 2* § 11.4(d) (3d ed. 2017) quoting J.W. Cecil Turner, *Attempts to Commit Crimes*, 5 Cambridge L.J. 230, 236 (1934).

### 2. Severity of the crime

In assessing substantiality, we look at the nature and severity of the offense. "[T]he more serious the crime attempted . . . , the further back in the series of acts leading up to the consummated crime should the

criminal law reach in holding the defendant guilty for attempt." *Ward v. State*, 528 N.E.2d 52, 54 (Ind. 1988) quoting Francis Bowes Sayre, Sr., *Criminal Attempts*, 41 Harv. L. Rev. 821, 845 (1928). An act that is insubstantial for an attempt conviction on a less serious charge may well be substantial for more serious crimes. For example, a reconnaissance mission in furtherance of stealing a target's wallet may be insufficient to convict for attempted theft. But the same mission in furtherance of killing the target could be sufficient to convict for attempted murder.

### 3. Proximity and remoteness

The third factor we consider is the proximity (or remoteness) of the actor's conduct to his intended crime. Proximity and remoteness, sometimes viewed as opposite sides of the same coin, have both temporal and geographic dimensions. If the actor's conduct is sufficiently proximate in time and place to the planned offense, then he is more likely guilty of attempt. But the reciprocal proposition does not necessarily follow. Just because the actor's completed conduct may be remote in time or place to the underlying crime does not mean there was no attempt. The reason for treating these complementary concepts differently is that Indiana "focuses on the substantial step that the defendant has completed, not on what was left undone." *Zickefoose*, 270 Ind. at 623, 388 N.E.2d at 510. If the completed acts represent a substantial step, then there was an attempt, even if one or both dimensions of proximity are unsatisfied.

### 4. The Model Penal Code

Like Indiana's attempt statute, I.C. 35-41-5-1(a), the Model Penal Code considers whether the defendant took a "substantial step" toward commission of the underlying crime. Section 5.01(2) of the Model Penal Code lists examples of conduct that may qualify as a substantial step:

> (a) lying in wait, searching for or following the contemplated victim of the crime;
>
> (b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;

(c) reconnoitering the place contemplated for the commission of the crime;

(d) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed;

(e) possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances;

(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;

(g) soliciting an innocent agent to engage in conduct constituting an element of the crime.

Model Penal Code § 5.01(2) (Am. Law Inst. 2018). A person who engages in one or more of these recited acts may be subject to liability under Indiana's criminal-attempt statute. We do not hold that a trial court that acquits despite the presence of one of these acts commits error. But it is difficult to imagine reversing a trial court that convicts in the presence of one of these acts.

### 5. Aggregate conduct

Last, we consider the cumulative effect of all the defendant's actions taken together. In other words, the factfinder should consider the totality of the circumstances instead of isolating each fact that the State raises about the defendant's conduct.

### B. There was sufficient evidence for a reasonable factfinder to determine B.T.E. attempted to commit aggravated battery.

The trial court determined that B.T.E.'s conduct over four months satisfied the substantial-step requirement. We hold on this record that substantial evidence supports the trial court's adjudication of B.T.E. as a juvenile delinquent for attempted aggravated battery.

Our attempt test comprises the five factors outlined in Section A. We balance those factors, keeping in mind our deferential standard of review. The test is not conjunctive, but embraces a sliding scale. If the State shows the defendant's acts were strongly corroborative of his criminal intent, that lessens the need for proximity. Thus, the absence of one or more factors is not fatal to a finding of attempt. Conversely, just one or two factors, if compelling enough, can lead to a finding of attempt.

### 1. Strong corroboration

As discussed next, B.T.E.'s solicitations, drawings and diagrams, and death note strongly corroborate his criminal intent.

#### a. Solicitations

As mentioned, B.T.E. recruited M.V. to help carry out his planned attacks at Seymour High School, including sharing with M.V. detailed notes outlining his research into how to make a pipe bomb, debating what murder weapon would be best for killing J.R., and discussing tips for avoiding suspicion. And B.T.E. urged D.H., who lived elsewhere and was suicidal, to travel to Seymour to kill J.R. before taking his own life. B.T.E. had also sent D.H. a picture of J.R.

B.T.E.'s solicitation of M.V. and D.H. manifests his commitment to carrying out his planned offense of aggravated battery in two respects. First, discussing his plans with potential accomplices brought B.T.E. closer to committing a crime. He discussed the logistics of getting away with murder with his friend M.V., and he discussed how to obtain a murder weapon. And, in his conversations with D.H., he actively urged D.H. to commit the crime. These solicitations reveal the tenacity with which B.T.E. was pursuing his goal of harming J.R. Second, the solicitation subjects B.T.E. to potential adverse consequences for his violent desires. By telling his friends, he risked being reported to school officials, his parents, or police. So firm was B.T.E. to committing aggravated battery that he was willing to take that risk to carry out his plan.

The Court of Appeals, however, concluded that B.T.E.'s solicitations were not a substantial step, relying on *Ward*, 528 N.E.2d 52. There, we adopted two tests for assessing whether solicitation "is an attempt. One test asks whether the underlying offense is a "sufficiently serious crime" that it makes sense to treat even early steps toward completion of the offense as substantial. *Id*. at 54. The other test, cited by the panel majority below, requires (among other things) that any solicitation must urge the commission of a crime "at some immediate time and not in the future". *B.T.E.*, 82 N.E.3d at 278 (quoting *Ward*, 528 N.E.2d at 54). Because B.T.E.'s planned crimes at Seymour High School against his two classmates were not imminent, the Court of Appeals held B.T.E.'s solicitations did not qualify as an attempt under *Ward*. We respectfully disagree and hold that *Ward* does not govern here for two reasons.

First, the narrow issue in *Ward* was whether an adult defendant's solicitations of two underage boys to engage in sexual activity were a substantial step toward completion of the underlying offenses of child molesting and thus qualified as attempted child molesting. *Ward* did not address the very different issue here, which is whether a defendant's solicitations **in conjunction with other affirmative steps** together can satisfy the substantial-step requirement. We hold they can. B.T.E.'s solicitations were not the only overt acts he committed. *Ward* does not foreclose treating solicitation as a substantial step even for remote-in-time offenses if they would be substantial when viewed alongside other overt acts.

Second, *Ward*'s holding involved two-party solicitations. As we observed, the underlying crime of child molesting "is a two-party offense, which requires the cooperation or submission of the child being solicited." 528 N.E.2d at 55. *Ward* expressly excluded from its solicitation-as-attempt test the three-party solicitation at issue here: "This **specific** evaluation of the solicitation, therefore, excludes three-party solicitations, where A solicits B to murder C." *Id*. at 54 n.3 (emphasis added). The Court of Appeals believed this statement from *Ward*—which it said "precisely describes" B.T.E.'s solicitations, 82 N.E.3d at 279—to mean that B.T.E. did not take a substantial step toward the crime of aggravated battery. Again, we disagree with this narrow interpretation of *Ward*. Our focus is on the

steps taken toward completing the underlying crime and not on the steps remaining. We reject a categorical rule that A's solicitation of B to commit a crime against C can never amount to attempt.

### b. Drawings and diagrams

In addition to his solicitations of the two other students, B.T.E. drew a pair of diagrams that represent affirmative steps toward fulfilling his planned Columbine-style attacks on the high school. One diagram depicts the high-school building where the attacks were to occur. The other shows the specific classroom that B.T.E. targeted. This latter diagram reveals the location of the room's entrance and exit, and it contains a crude seating chart with two of the chairs highlighted and another chair marked with an "x". The preparation of these diagrams is among several acts strongly corroborative of B.T.E.'s criminal intent to commit aggravated battery.

### c. Death note

B.T.E. also prepared a seven-page, single-spaced note that M.V. was to share at school after B.T.E.'s death. It included messages of varying lengths expressing his sentiments about more than a dozen of his classmates. Some of the messages are cold and crass: "kill yourself". Others are warm and even affectionate: "I like you a lot and always will." We agree with the Court of Appeals' dissent that this note appears to show that B.T.E. is "put[ting] his affairs in order" in anticipation of his planned attack and, thus, is "strongly corroborative of the firmness of his intent to attack J.R. in school." 82 N.E.3d at 284 (Bradford, J., concurring in part, dissenting in part).

In sum, B.T.E.'s solicitations and other acts strongly corroborate his criminal intent. This factor weighs heavily in favor of the trial court's attempt adjudication.

### 2. Severity of the offense

We observed in *Ward* that the line between mere preparation and a substantial step depends on the seriousness of the offense. There, the

Court had "little difficulty" concluding that child molesting "is a sufficiently serious crime to justify drawing a fairly early line to identify and sanction behavior as an attempt." 528 N.E.2d at 54.

For B.T.E.'s proposed crimes against his school and two of his classmates, we conclude that aggravated battery also is "sufficiently serious" that it warrants drawing an "early line" to assess whether B.T.E. "attempted" aggravated battery. B.T.E.'s affirmative steps included his prolonged solicitation of M.V. and D.H. In numerous Facebook chats over several weeks, B.T.E. said he would do things to J.R. that "would make even the sociopathic of sociopaths shake and stutter [sic]"; that he would kill J.R. and "[i]f [J.R.] dates [G.M.] then I will seriously kill him" and "I'll kill her too"; that he "should kill [J.R.] to prove that I never fail"; that he would kill J.R., his dogs, his parents, and burn down his house with him in it; that he would "HELP [J.R.] CATCH PERMANENT ZZZ … OR IMPALE HIM LIKE VLAD THE IMPALER DID"; that "[h]opefully [J.R.] kills himself because I'm going to get myself arrested if he doesn't"; that it was too bad he didn't have a benevolent mind or J.R. would make it past high school; that G.M. should hope he never gets to his father's gun or he would kill her and J.R., saying "that's two people I want to kill in Seymour high"; that he wanted to get a "bowl cut" and "become famous after I'm arrested", an apparent reference to the hairstyle of mass murderer Dylann Roof; and that he wanted J.R. to get "nonstop" sleep. B.T.E. also wrote more explicitly vile messages that are part of this record, but we omit them in the interest of decorum. In addition to these solicitations are B.T.E.'s school drawings and death note—all of which strongly corroborate his plan to fulfill his intended crime. And they support the trial court's conclusion that B.T.E.'s acts were a substantial step toward committing aggravated battery. B.T.E.'s discussions with friends over Facebook were not idle chatter or the venting of frustrations after one bad day. His threats were both serious and sustained over a period of months, revealing the palpable danger he posed to his classmates. The severity of his crime—a school shooting—weighs heavily in favor of the trial court's attempt adjudication.

### 3. Proximity and remoteness

Like the Court of Appeals, we pause when presented with a finding of attempt against an offender who says he will commit his crime two years in the future. But a distant date is not dispositive on this record for two reasons. First, regardless of the acts that remain, B.T.E.'s completed conduct is sufficiently dangerous and corroborative of a seriousness of purpose that the law can reasonably reach back and treat it as a substantial step.

Second, some of B.T.E.'s own words and deeds suggest he might carry out an attack much sooner than his senior year in high school. One example is B.T.E.'s conversations with D.H., in November 2015, in which he solicits his potentially suicidal friend to come to Seymour High School and murder J.R. before taking his own life. The solicitation seems to be a present-tense command. And nothing in the record suggests D.H. had any reason to believe B.T.E.'s plan called for an attack in April 2018. In one conversation, D.H. suggested killing a friend of B.T.E.'s—a student at Seymour High School. D.H. even asked B.T.E. to send a picture of the friend. In response, B.T.E. suggested that D.H. kill J.R., and he sent a picture of J.R. so that D.H. could identify him. The next week, when D.H. told B.T.E. he was suicidal, B.T.E. encouraged him to come to Seymour High School and kill J.R. before killing himself.

> D.H.: I'm so close to killing myself.
>
> B.T.E.: No no kill someone else not yourself.
>
> B.T.E.: Come to Seymour and kill that fucker and then kill yourself.
>
> . . . .
>
> D.H.: I'm gonna kms.
>
> . . . .

B.T.E.:   Don't do that.

B.T.E.:   Kill others before yourself.

On its face, this solicitation appears to urge violence against J.R. much sooner than B.T.E.'s proposed date in April 2018.

Additionally, B.T.E.'s classroom drawing in which two seats are shaded and another is marked with an "x" hints at more imminent violence. As students change classes and classrooms from one year to the next—and almost certainly change their seating assignments—B.T.E.'s map would presumably have no value for a crime planned two years in the future.

Finally, B.T.E.'s "death note" also indicates an attack may be more imminent. The note does not discuss the nature of B.T.E.'s eventual crime. But its mere existence speaks to both the seriousness of B.T.E.'s plot and its timing. After all, B.T.E.'s note written in 2015 or 2016 would not necessarily reflect his feelings about his classmates in April 2018.

We find it instructive to compare this case to a recent, strikingly similar case from Vermont also involving a prospective school shooter. In *State v. Sawyer*, 187 A.3d 377 (Vt. 2018), a recent graduate was alleged to have planned a shooting at his former high school. The defendant allegedly wrote detailed journals expressing his wishes and plans for committing a school massacre and procured a shotgun in service of those plans. *Id.* at 380-81. He also sent Facebook messages to friends suggesting he was a threat to his former school and admitted to police that he planned to attack the school. *Id.* And like B.T.E., Sawyer planned "a mass shooting on the anniversary of the date of the Columbine school shooting". *Id.* at 381.

The Vermont Supreme Court held Sawyer's actions likely did not amount to an attempt under Vermont law, which "requires an intent to commit a crime, coupled with an act that, but for an interruption, would result in the completion of a crime." *Id.* at 382 (citing *State v. Hurley*, 64 A. 78 (Vt. 1906)). *Sawyer* recognized the difference between Vermont's attempt statute and those statutes, like Indiana's, that require merely a substantial step. In doing so, the Vermont Supreme Court noted that Sawyer might be guilty of attempt under a substantial-step attempt

statute. *Id.* at 385-86. "The substantial-step analysis presents a lower bar regarding the kind of act required to show that a defendant has attempted to commit a crime". *Id.* at 385. Ultimately, unlike Vermont, Indiana adjudges a person preparing to commit a crime guilty of attempt much earlier along the continuum.

We also note that some Indiana caselaw on attempt focuses substantially more on proximity and, in particular, remoteness than we do here. Each of the defendants in *Calvert v. State*, 930 N.E.2d 633 (Ind. Ct. App. 2010), *Collier v. State*, 846 N.E.2d 340 (Ind. Ct. App. 2006), and *State v. Kemp*, 753 N.E.2d 47 (Ind. Ct. App. 2001), trans. denied, were closer in time or space to committing their underlying respective crimes when arrested than was B.T.E. In *Calvert*, the defendant drove around a liquor store to scout it for a holdup with a shotgun in his car. 930 N.E.2d at 639-40. In *Collier*, the defendant told his neighbor he was going to murder his ex-wife and staked out her workplace while possessing an ice pick, box cutter, and pair of binoculars. 846 N.E.2d at 342-43. And in *Kemp*, which has since been superseded by statute, the defendant was alleged to have met with an undercover officer posing as an underage girl to engage in sexual activity. 753 N.E.2d at 51. Yet in all three cases, the Court of Appeals held there was no substantial step and thus no attempt. To the extent that *Calvert*, *Collier*, or *Kemp* would have foreclosed finding a "substantial step" under these facts, we disapprove of these cases. Lack of proximity is not dispositive.

### 4. Model Penal Code

B.T.E. engaged in some conduct that may be held a substantial step, according to Model Penal Code section 5.01(2). He unquestionably was "soliciting an innocent agent to engage in conduct constituting an element of the crime", Model Penal Code § 5.01(2)(g), by asking D.H. to kill J.R. before killing himself.

True, the Model Penal Code also refers to "reconnoitering the place contemplated for the commission of the crime". § 5.01(2)(c). And Judge Bradford's dissent views B.T.E.'s drawings of his school building and classrooms as reconnoitering under section 5.01(2)(c). But on this record,

we conclude B.T.E. was not undertaking a reconnaissance mission at his school; by law, he had to be there during school hours. I.C. § 20-33-2-4. Even so, the drawings are strongly corroborative of B.T.E.'s criminal intent.

### 5. Aggregate conduct

Last, we consider B.T.E.'s conduct in the aggregate. The State's evidence shows a young man with a clear intention to commit violence at his school, along with affirmative acts that strongly corroborate that intent. On their own, B.T.E.'s conversations with his friend M.V. might be viewed as a long-running "joke", albeit one extremely offensive and in poor taste; his drawings of the school building and classroom the reckless doodles of a bored student; and his death note a dramatic diary entry. But together these acts reflect a young man who, despite knowing the difference between right and wrong, both conjured up a horrific scene at school involving death and mayhem to fellow classmates and then took affirmative actions toward carrying out that plan. Based on our consideration of all the evidence, we cannot say the juvenile court committed reversible error in adjudicating B.T.E. a delinquent on the charge of attempted aggravated battery.

# Conclusion

B.T.E. did more here than simply think evil thoughts. What may have begun as mere ruminations about his hatred for J.R. turned into a plot to kill him along with another classmate, and then extended beyond mere planning and preparation. The planning, the solicitations, the bomb research, the drawings depicting the target classroom, and the death note together justify the trial court's conclusion that B.T.E.'s affirmative conduct amounts to a substantial step toward the commission of aggravated battery. For these reasons, we affirm the trial court's judgment.

Rush, C.J., and David, Massa, and Goff, JJ., concur.

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana


ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana