

**FILED**

Nov 19 2018, 10:14 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Caroline G. Templeton
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.S.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner.* | November 19, 2018<br><br>Court of Appeals Case No.<br>18A-JV-826<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Gary K. Chavers, Judge Pro Tempore<br><br>Trial Court Cause No.<br>49D09-1710-JD-1490 |

**Bailey, Judge.**

# Case Summary

[1] J.S. was adjudicated a delinquent child with true findings for: (1) Dangerous Possession of a Firearm, a Class A misdemeanor;[1] and (2) Resisting Law Enforcement, an act that would be a Class A misdemeanor if committed by an adult.[2] J.S. now challenges the sufficiency of the evidence supporting his true finding for Dangerous Possession of a Firearm. We affirm.

# Facts and Procedural History[3]

[2] On October 18, 2017, the Indianapolis Metropolitan Police Department learned that a juvenile—other than J.S.—had stolen a vehicle and a firearm from his parents. That evening, Officer Nicholas Snow ("Officer Snow") encountered a vehicle matching the description of the stolen vehicle, with three occupants inside. Officer Snow began following the vehicle and contacted additional officers. The plan was to conduct a tactical stop for officer safety, ordering the occupants out of the vehicle one at a time. Among the responding officers was Officer William Hornaday ("Officer Hornaday"), who assisted with the stop.

[3] The officers first ordered the driver out of the vehicle. Thereafter, the front passenger ran from the vehicle. Officer Hornaday ran after the individual.

---

[1] Ind. Code § 35-47-10-5(a).

[2] I.C. § 35-44.1-3-1(a)(3).

[3] On October 25, 2018, we held oral argument at Princeton Community High School in Gibson County. We thank the staff and students for their hospitality, and thank counsel for their skilled advocacy.

Meanwhile, Officer Snow took note of the individual's appearance, observing that the individual was a Hispanic male wearing white shoes, dark pants, and a white shirt under a sweatshirt. The individual was holding a black object. Although Officer Snow could not readily identify the object, whether it was through his training—or "the way [the individual] was holding whatever it was"—Officer Snow "believed it to be a gun so much so that [he] got on the radio and . . . said that [the individual] was armed." Tr. Vol. II at 16-17.

[4] Officer Hornaday pursued the individual through a residential area, into a dark area between houses. Officer Hornaday lost sight of the individual, but then found a black gun on the ground nearby. A few blocks away, Officer Ryan Deakin ("Officer Deakin") saw a Hispanic male running toward him wearing white shoes, dark pants, and a white t-shirt. Officer Deakin arrested the person—later identified as J.S.—who complained that he was cold. When Officer Deakin said that J.S. should not have taken off his sweatshirt, J.S. laughed. At this time, J.S. did not have a firearm but did have a cell phone that kept ringing. J.S. was transported to the area of the vehicle stop, where Officer Snow identified J.S. as the passenger who fled. J.S. was sweating and was uncooperative with the officers. Around that time, J.S. was near the two other individuals who had been in the vehicle. J.S. tried to make eye contact with them. Eventually, the three of them were placed together inside a transport vehicle, and a conversation ensued in Spanish. One individual called J.S. a dumbass, and J.S. said "I can't believe they got me" or "I thought that I was

going to get away and not get caught."[4]  *Id.* at 81.  At some point, law enforcement recovered contraband from the center console of the stolen vehicle.

[5]  The State filed a petition alleging that J.S. was a delinquent child for conduct related to the firearm, the contraband in the console, and the flight from law enforcement.  After a denial hearing, the juvenile court entered true findings for Dangerous Possession of a Firearm and Resisting Law Enforcement.  The juvenile court adjudicated J.S. a delinquent child and placed him on probation with a suspended commitment to the Indiana Department of Correction.

[6]  J.S. now appeals.

# Discussion and Decision

[7]  A true finding "must be based upon proof beyond a reasonable doubt."  I.C. § 31-37-14-1.  When reviewing a challenge to the sufficiency of evidence supporting a true finding, "we do not reweigh the evidence or judge witness credibility."  *B.T.E. v. State*, 108 N.E.3d 322, 326 (Ind. 2018).  Rather, "[w]e consider only the evidence favorable to the judgment and the reasonable inferences supporting it."  *Id.*  We will affirm the judgment so long as there is "substantial evidence of probative value . . . from which a reasonable fact finder

---

[4] An officer who overheard this conversation offered both statements as possible translations.

could conclude beyond a reasonable doubt" that the juvenile engaged in the unlawful conduct. *A.B. v. State,* 885 N.E.2d 1223, 1226 (Ind. 2008).

[8] J.S. challenges only his true finding for Dangerous Possession of a Firearm. Indiana Code Section 35-47-10-5(a) provides, in pertinent part, that "[a] child who knowingly, intentionally, or recklessly possesses a firearm . . . commits dangerous possession of a firearm, a Class A misdemeanor." Moreover, "[a] person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2.

[9] At the denial hearing, J.S. pursued a defense of mistaken identity—but the State presented ample evidence that J.S. was the person who fled. Indeed, among the evidence was testimony from Officer Snow, who identified J.S. as the person he saw running from the vehicle. There was also evidence of the incriminating conversation between J.S. and the others from the vehicle. In now pursuing his appeal, J.S. does not focus on evidence of his identity. Rather, he challenges whether the State presented sufficient evidence that he possessed a firearm.

[10] It is well-settled that possession can be actual or constructive, with "[a]ctual possession occur[ing] when a person has direct physical control over the item." *Henderson v. State*, 715 N.E.2d 833, 835 (Ind. 1999). According to J.S., a theory of actual possession cannot support his true finding because he "was not found in direct physical control of the gun." Br. of Appellant at 13. Yet, the evidence favorable to the adjudication indicates that law enforcement found a black firearm along the route J.S. took when he fled—shortly after Officer Snow saw

J.S. clutching a black object, and suspected the object was a firearm. A fact-finder may consider flight to be "circumstantial evidence of consciousness of guilt." *Myers v. State*, 27 N.E.3d 1069, 1077 (Ind. 2015) (quoting *Brown v. State*, 563 N.E.2d 103, 107 (Ind. 1990)). Furthermore, there was no explanation for the firearm on the ground, other than pure coincidence.

[11] J.S. minimizes the evidence against him, arguing that it "establishes a possibility J.S. may have possessed a firearm but it falls far short of proof beyond a reasonable doubt." Br. of Appellant at 13. As to any inference to be drawn from his flight, J.S. argues that he could have fled for other reasons—"because he knew drugs and paraphernalia would be found in the vehicle"—and that, "[w]hatever his motive, at best it has a tenuous connection to possession of a firearm." *Id.* at 15. J.S. also speculates that the object might have been a cell phone, "which could readily have been mistaken for a weapon during the heightened tensions present in a 'high risk' traffic stop." *Id.* at 14. J.S. also focuses on other exculpatory evidence, including evidence that he was "excluded . . . as the source" of fingerprints found on the firearm. *Id.* at 15.

[12] Yet, we cannot reweigh the evidence, from which a reasonable fact-finder could conclude—beyond a reasonable doubt—that when J.S. fled from the vehicle, he knowingly and actually possessed the black firearm recovered along his route. Thus, we conclude that there is sufficient evidence to support the true finding.

[13]     Affirmed.


Najam, J., concurs.
May, J., concurs in result with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

J.S.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

Court of Appeals Case No.
18A-JV-826

**May, Judge, concurring in result.**

[1] I write separately to note the discrepancy between Officer Snow's testimony at trial and his Probable Cause Affidavit. In the Probable Cause Affidavit, Officer Snow reported:

> [T]he passenger of the vehicle the front seat passenger fled on foot. The male was described as a Hispanic male approximately 5-09 wearing a blue sweatshirt with a white undershirt and black jeans. Officer Snow observed this male to be gripping his waist band as he ran east bound from the location of the traffic stop. Officer Hornaday gave chase on foot and began yelling loud verbal commands to the male, identifying himself as the police and commanding the male to stop running. While Officer Hornaday was giving chase, Officer Hornaday located a black semi-automatic Springfield 9mm XD-9 handgun with serial number MG727669 and a magazine loaded with 6 live 9mm rounds, in front of 6038 Allendale Dr, in the direct path of where the male was running.

(App. Vol. II at 18) (errors in original).

[2] However, at trial Officer Snow testified, regarding the same series of events:

> [Prosecutor]: And when the suspect who was in the vehicle ran, did you get a look at him?
>
> [Officer Snow]: I did sir. He was wearing a blue hooded sweatshirt, a white shirt. I remember it being out from underneath the blue hooded sweatshirt. Dark blue jeans and white tennis shoes and he was clutching a black object in his hand. And when he ran he turned and looked at me to the point where I could see from this side of his nose to his ear as he turned. I couldn't readily identify exactly what was in his hand. I was, through my training experience the way he was holding whatever it was, I believed it be to a gun so much so that I got on the radio and I said that he was armed.
>
> [Prosecutor]: After the suspect ran, what did you do?
>
> [Officer Snow]: There was another officer to my right, Officer Hornaday, he gave chase. . . .

(Tr. Vol. II at 16-7.) On cross-examination, J.S.'s counsel questioned Officer Snow about the details of the encounter, but counsel did not attempt to impeach Officer Snow with the discrepancies in his iterations of the events, specifically, the lack of information regarding something he believed to be a gun in J.S.'s hand when he fled from the passenger side of the vehicle.

[3] As a result of the failure to point out the difference between Officer Snow's account of the incident in the Probable Cause Affidavit and his testimony at trial, the only evidence heard by the trial court judge was that Officer Snow observed a black object, which he believed to be a gun, in J.S.'s hand. Because of our standard of review, I concur in result.