## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 23 2019, 11:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen M. Heard
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

A.Y.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Plaintiff,*

April 23, 2019

Court of Appeals Case No.
18A-JV-2668

Appeal from the Vanderburgh
Superior Court

The Honorable Renee A. Cain,
Magistrate

Trial Court Cause No.
82D04-1808-JD-1596

**Tavitas, Judge.**

# Case Summary

A.Y. appeals his adjudication as a delinquent for an act that would be considered attempted armed robbery if committed by an adult, a Level 3 felony. We affirm.

# Issues

A.Y. raises two issues, which we restate as:

I. Whether the evidence is sufficient to sustain A.Y.'s adjudication as a delinquent for an act that would be considered attempted armed robbery if committed by an adult, a Level 3 felony.

II. Whether the juvenile court erred by committing A.Y. to the Department of Correction.

# Facts

On August 10, 2018, A.Y.'s friend sent a message to Giles Thomas on Facebook asking if he had marijuana for sale. Thomas' Facebook name is "Mob Jay." Tr. Vol. II p. 47. Thomas responded that he did have some marijuana for sale and asked who wanted to buy it. A.Y.'s friend said, "He's gonna inbox you." *Id.* at 42. Fourteen-year-old A.Y. then sent Thomas a message asking to buy a "zip" of marijuana, which is half an ounce. *Id.* They later arranged to meet at a church near "Boeke and Riverside." *Id.* at 43. The church was also near a Circle K gas station.

That evening, A.Y. arrived at the residence of Chloe Redfield and asked for a ride "down the road" to pick up clothes from "Mob." *Id.* at 12. Redfield was

giving her daughter a bath and told A.Y. that, if he could walk there, she could pick him up. A.Y. said he was walking toward the gas station at the "corner of Riverside and Boeke," which was four or five blocks from Redfield's residence. *Id.* at 13.

[5] Thomas took his loaded handgun with him. Thomas met with A.Y. and another person unknown to Thomas at the church's parking lot. Thomas showed A.Y. the marijuana and asked to see the money. Instead of money, A.Y. pulled out what Thomas thought was a handgun and said, "Give me everything." *Id.* at 44. Thomas acted like he was reaching for the marijuana and, instead, pulled out his handgun. Thomas then shot A.Y. in the stomach. A.Y.'s friend ran away, and Thomas drove off.

[6] Redfield went to the gas station to pick up A.Y. When she arrived, she heard a gunshot and saw A.Y. running, holding his stomach, and yelling for help. Redfield went to help A.Y. and called 911. Officers later discovered a realistic-looking BB gun and a shell casing behind the church. Thomas was arrested that evening, and a police detective read the Facebook messages between Thomas and A.Y.

[7] The State filed a petition alleging that A.Y. was a delinquent child for committing acts that would be considered: (1) armed robbery if committed by an adult, a Level 3 felony; and (2) robbery if committed by an adult, a Level 5 felony. On October 1, 2018, the State filed an amended petition to allege A.Y. committed acts that would be considered: (1) attempted armed robbery if

committed by an adult, a Level 3 felony; and (2) attempted robbery if committed by an adult, a Level 5 felony.

[8] After a hearing, the juvenile court found that A.Y. committed acts that would be attempted armed robbery if committed by an adult, a Level 3 felony. The State moved to dismiss the Level 5 felony allegation, which the juvenile court granted. The juvenile court then committed A.Y. to the Department of Correction ("DOC"). A.Y. now appeals.

# Analysis

## I. Sufficiency of the Evidence

[9] A.Y. challenges the sufficiency of the evidence to support his adjudication as a delinquent for an act that would be considered attempted armed robbery if committed by an adult, a Level 3 felony. "When reviewing the sufficiency of the evidence in a juvenile adjudication, we do not reweigh the evidence or judge witness credibility." *B.T.E. v. State,* 108 N.E.3d 322, 326 (Ind. 2018). "We consider only the evidence favorable to the judgment and the reasonable inferences supporting it." *Id.* "We will affirm a juvenile-delinquency adjudication if a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt." *Id.*

[10] The offense of attempted armed robbery, a Level 3 felony, is governed by Indiana Code Section 35-42-5-1 and Indiana Code Section 35-41-5-1. The State was required to prove that A.Y. knowingly or intentionally engaged in conduct constituting a substantial step toward taking "property from another person or

from the presence of another person . . . by using or threatening the use of force on any person . . . while armed with a deadly weapon." Ind. Code § 35-42-5-1(a); Ind. Code § 35-41-5-1(a).

[11] According to A.Y., no evidence was presented that he threatened to rob Thomas except for Thomas' testimony. A.Y. argues no video of the meeting exists, and there were no witnesses to the meeting. A.Y. also contends that no physical evidence linked the BB gun to A.Y. Finally, A.Y. points out that the Facebook messages could not be retrieved.

[12] A.Y.'s argument is merely a request that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. Thomas's credibility was within the province of the juvenile court to decide. The State points out that A.Y. does not argue Thomas' testimony was incredibly dubious. Although Thomas may not have been a "model witness" due to his history of dealing drugs, we cannot reassess his credibility. *Reed v. State*, 748 N.E.2d 381, 395 (Ind. 2001). "[T]he uncorroborated testimony of one witness is sufficient to sustain a conviction on appeal . . . ." *Id.* at 396. Similarly, the lack of physical evidence tying A.Y. to the offense was a matter for the juvenile court to weigh.

[13] The State presented sufficient evidence that A.Y. arranged a drug transaction with Thomas in the church parking lot and that A.Y. pointed a realistic-looking BB gun at Thomas while demanding the marijuana. We have held that "BB guns can be considered deadly weapons within the statute." *Merriweather v.*

*State*, 778 N.E.2d 449, 457 (Ind. Ct. App. 2002). The State presented sufficient evidence to sustain A.Y.'s adjudication.

## *II. Disposition*

[14] A.Y. also argues that the juvenile court erred by committing A.Y. to the DOC. "The juvenile court has discretion in choosing the disposition for a juvenile adjudicated delinquent." *D.E. v. State,* 962 N.E.2d 94, 96 (Ind. Ct. App. 2011) (citing *L.L. v. State,* 774 N.E.2d 554, 556 (Ind. Ct. App. 2002), *trans. denied*). "The discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition." *Id.* "We may overturn [A.Y.'s] disposition order only if the court abused its discretion." *Id.* "An abuse of discretion occurs when the juvenile court's judgment is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

[15] Indiana Code Section 31-37-18-6 states:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> > (1) is:
> >
> > > (A) in the least restrictive (most family like) and most appropriate setting available; and

(B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

"[T]he statute requires placement in the least restrictive setting only '[i]f consistent with the safety of the community and the best interest of the child.'" *J.S. v. State*, 881 N.E.2d 26, 29 (Ind. Ct. App. 2008) (quoting I.C. § 31-37-18-6). "Thus, the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *Id.*

[16] According to A.Y., the juvenile court should have committed A.Y. to a less restrictive setting. A.Y. argues that: (1) his adjudication history is limited; (2) he has been placed in special education services at school; (3) he has been diagnosed with ADHD; (4) he suffered severe injuries as a result of the gunshot wound; and (5) the juvenile court did not consider other placement alternatives.

[17] A.Y.'s juvenile criminal history, although limited, has escalated. A.Y. was referred to the juvenile court in September 2015 and October 2017 for disorderly conduct. In both cases, A.Y. was lectured and released. A.Y. was

then adjudicated in February 2018 for two counts of criminal mischief. He was placed on probation, and a motion to modify was filed in March 2018 because A.Y. left home. A.Y. was placed at Hillcrest and released to his mother in April 2018. His mother reported that A.Y. was missing in May 2018. A.Y. then committed this offense of attempted armed robbery in August 2018. After A.Y. was released from the hospital due to his gunshot wound, he was placed at Southwest Indiana Regional Youth Village ("SIRYV"). There, he was verbally aggressive to staff, participated in the assault of another youth while the youth was sleeping, and was caught making gang signs.

[18] The probation department recommended that A.Y. be committed to the DOC "due to the seriousness of the offense and the juvenile being a risk to the community." Tr. Vol. II p. 71. The juvenile court noted A.Y.'s "slight juvenile history" but focused on A.Y.'s severe, armed offense and continued violent and aggressive behavior at SIRYV. The juvenile court concluded that A.Y. "presents as a danger to others [and] himself." *Id.* at 76. As a result, the juvenile court determined that the "only place" appropriate for A.Y. was the DOC. *Id.*

[19] Although A.Y. requests that we conclude that the juvenile court abused its discretion by placing him in the DOC because a less restrictive option was available, there are times when commitment to the DOC is in the best interest of the juvenile and society. *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005). Given A.Y.'s escalating criminal offenses, the seriousness of his current offense, and his continued aggressive behavior at SIRYV, this is one of those

times.  We cannot say that the juvenile court abused its discretion in committing A.Y. to the DOC.

## Conclusion

[20]  The evidence is sufficient to sustain A.Y.'s adjudication, and the juvenile court did not abuse its discretion by committing A.Y. to the DOC.  We affirm.

[21]  Affirmed.

Crone, J., and Bradford, J., concur.