## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 17 2019, 8:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Troy D. Warner
Deputy Public Defender
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T.F., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 17, 2019 <br><br> Court of Appeals Case No. 18A-JV-2562 <br><br> Appeal from the St. Joseph Probate Court <br><br> The Honorable James C. Stewart Brown, Magistrate <br><br> Trial Court Cause No. 71J01-1806-JD-166 |

**Pyle, Judge.**

# Statement of the Case

T.F. was adjudicated a delinquent child with a true finding for Class A misdemeanor dangerous possession of a firearm.[1] T.F. argues that there was insufficient evidence to support his true finding and that the probate court abused its discretion by committing him to the Department of Correction ("DOC"). Concluding that there was sufficient evidence and the probate court did not abuse its discretion, we affirm the trial court.

We affirm.

# Issues

1. Whether the State presented sufficient evidence to sustain T.F.'s true finding for dangerous possession of a firearm.
2. Whether the probate court abused its discretion by committing T.F. to the DOC.

# Facts

On June 8, 2018, Officer Hunter Miller ("Officer Miller") with the South Bend Police Department initiated a traffic stop of a vehicle with a false license plate. The vehicle had five occupants: the driver, a front-seat passenger, and three individuals in the backseat. After the vehicle had stopped, two of the individuals from the backseat exited the left rear passenger door and fled on

---

[1] IND. CODE § 35-47-10-5.

foot. T.F. exited the vehicle from the right rear passenger door and was ordered to stop by Officer Miller. Officer Miller had observed T.F. sitting in the backseat behind the front passenger seat and did not observe any of the occupants attempt to crawl over each other prior to exiting the vehicle.

[4] After all parties had been detained, Officer Miller approached the vehicle and observed a rifle and a handgun in plain view in the backseat. The rifle was leaning against the seat which T.F. had previously occupied and the handgun was located on the seat. Ammunition for the rifle was also observed on the floor where T.F. had been sitting.

[5] The State filed a petition alleging that T.F. was a delinquent child for committing the crime of Class A misdemeanor dangerous possession of a firearm. On August 24, 2018, the probate court held a fact-finding hearing on the delinquency petition. Several officers from the South Bend Police Department, including Officer Miller, testified to the facts above. In addition to the testimony of the officers, the State also introduced into evidence photographs depicting the location of the firearms in the backseat. After the presentation of evidence, the probate court entered a true finding against T.F. for dangerous possession of a firearm.

[6] On September 24, 2018, the court held a disposition hearing. The Probation Department recommended the court commit T.F. to the DOC because "probation, home detention, placement, [and] day reporting" had all failed "to get [T.F.] to make the right choices." (Tr. 62). The Probation Department

further explained that T.F. had "been out [of residential placement] for two months when he was involved in the new offense that is pending disposition today." (Tr. 62). The court found that "[i]t is in the best interests of the child to be removed from the home environment and [that] remaining in the home would be contrary to the health and welfare of the child because: [T.F.'s] actions pose [a] danger to self and others[ ]" and awarded wardship of T.F. to the DOC. (App. Vol. 2 at 16). T.F. now appeals.

# Decision

T.F. argues that: (1) there was insufficient evidence to support his true finding; and (2) the probate court abused its discretion by committing him to the DOC. We address each of his contentions in turn.

## 1. Sufficiency of Evidence

T.F. first contends that the evidence was insufficient to support his true finding. A true finding "must be based upon proof beyond a reasonable doubt." I.C. § 31-37-14-1. When reviewing a challenge to the sufficiency of evidence supporting a true finding, "we do not reweigh the evidence or judge witness credibility." *B.T.E. v. State*, 108 N.E.3d 322, 326 (Ind. 2018). Rather, "[w]e consider only the evidence favorable to the judgment and the reasonable inferences supporting it." *Id*. We will affirm the judgment so long as there is "substantial evidence of probative value . . . from which a reasonable fact finder could conclude beyond a reasonable doubt" that the juvenile engaged in the unlawful conduct. *A.B. v. State*, 885 N.E.2d 1223, 1226 (Ind. 2008).

[9] T.F. challenges the sufficiency of the evidence of constructive possession. INDIANA CODE § 35-47-10-5(a) provides, in pertinent part, that "[a] child who knowingly, intentionally, or recklessly possesses a firearm . . . commits dangerous possession of a firearm, a Class A misdemeanor." To satisfy these elements, the State must prove the defendant had either actual or constructive possession of the firearms. *Negash v. State*, 113 N.E.3d 1281, 1291 (Ind. Ct. App. 2018). Actual possession occurs when a person has direct physical control over an item, whereas constructive possession occurs when a person has the intent and the capability to maintain dominion and control over the item. *Id.* Specifically, T.F. contends that there was "insufficient [evidence] to prove dominion and control sufficient for [a] dangerous possession of a firearm" true finding. (T.F.'s Br. 8).

[10] To fulfill the intent element of constructive possession, the State must demonstrate the defendant's knowledge of the presence of the contraband. *Griffin v. State*, 945 N.E.2d 781, 784 (Ind. Ct. App. 2011). In cases where the accused has exclusive possession of the premises in which the contraband is found, an inference is permitted that he knew of the presence of the contraband and was capable of controlling it. *Id.* Where the control is non-exclusive, as was the case here, knowledge may be inferred from evidence of additional circumstances indicating the defendant's knowledge of the presence of the firearm. *Causey v. State*, 808 N.E.2d 139, 143 (Ind. Ct. App. 2004). These additional circumstances may include: (1) incriminating statements made by the defendant; (2) attempted flight or furtive gestures; (3) proximity of the

firearm to the defendant; (4) location of the firearm within the defendant's plain view; and (5) the mingling of a firearm with other items owned by the defendant. *Deshazier v. State*, 877 N.E.2d 200, 206 (Ind. Ct. App. 2007), *trans. denied*. To fulfill the capability requirement of constructive possession, the State must demonstrate that the defendant had the ability to reduce the firearm to his personal possession. *K.F. v. State*, 961 N.E.2d 501, 510 (Ind. Ct. App. 2012), *trans. denied*.

[11] Our review of the record reveals that there were a total of five individuals in the vehicle: the driver, front passenger, and three in the backseat. Two of the backseat occupants fled out of the left rear passenger door, and T.F. exited the right rear passenger door when he was ordered to stop by Officer Miller. After all parties had been detained, Officer Miller observed, in plain view, two firearms in the seat that was previously occupied by T.F. A rifle was leaning against T.F.'s seat and a handgun was on top of his seat. Additionally, ammunition was on the floor. This evidence sufficiently supports the probate court's finding that T.F. had constructive possession of the firearms because he had the intent and capability to exercise dominion and control over both firearms. The State presented sufficient evidence to support T.F.'s true finding beyond a reasonable doubt.

## 2. DOC Commitment

[12] T.F. asserts that the probate court abused its discretion by committing him to the DOC. He argues that his commitment "was a punitive decision based upon

T.F.'s presence in the [vehicle] that day and the size of the rifle found by police in the back seat." (T.F.'s Br. 10). We note that "the purpose of the juvenile process is vastly different from the criminal justice system." *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). Specifically, the goal of juvenile proceedings is "*rehabilitation* so that the youth will not become a criminal as an adult." *Id.* (emphasis in original). To facilitate this goal, courts have a number of options available for juvenile placement: "from a private home in the community, a licensed foster home, a local juvenile detention center, to State institutions[.]" *Jordan v. State*, 512 N.E.2d 407, 408 (Ind. 1987), *reh'g denied*.

[13] To assist juvenile courts in selecting amongst available placement alternatives, the Indiana Legislature has provided guidance regarding the option selected for any particular child:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

IND. CODE § 31-37-18-6. Within those parameters, a juvenile court has discretion in choosing the disposition appropriate for each juvenile delinquent. *D.E. v. State*, 962 N.E.2d 94, 96 (Ind. Ct. App. 2011). We review a court's disposition for an abuse of discretion. *Id*. at 97. An abuse of discretion occurs if the court's decision is "clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*.

[14] Here, a representative from the Probation Department testified at the disposition hearing that "probation, home detention, placement, [and] day reporting" had all failed "to get [T.F.] to make the right choices." (Tr. 62). Further, the representative testified that within two months of release from a residential placement facility, T.F. had been charged with the present offense. It is clear from the disposition hearing transcript that the probate court, after reviewing the ineffectiveness of numerous less-restrictive alternatives afforded to T.F., determined that making T.F. a ward of the DOC would be in his best interest. In light of T.F.'s failure to modify his behavior in response to prior services and placements, the probate court did not abuse its discretion by committing him to the DOC. *See, e.g.*, *D.E.*, 962 N.E.2d at 97 (concluding that there was no abuse of discretion in placement of juvenile at DOC where less-restrictive dispositions had been unsuccessful). Accordingly, we affirm the court's commitment of T.F. to the DOC.

Affirmed.

Riley, J., and Bailey, J., concur.