**Arthur SCOTT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A05–0603–CR–122.

Court of Appeals of Indiana.

Jan. 10, 2007.

Anthony C. Lawrence, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Arthur Scott appeals his conviction of attempted battery by means of a deadly weapon, a class C felony.

We affirm.

### ISSUE

Whether the actual evidence test of Indiana's Double Jeopardy Clause requires that Scott's conviction be reversed.

### FACTS

On January 18, 2000, the State charged Scott with intimidation, a class D felony; resisting law enforcement, a class A misde-

meanor; and attempted battery by means of a deadly weapon,[1] a class C felony. On June 1, 2001, a jury convicted Scott of the resisting law enforcement charge but was unable to reach a verdict on the other two counts.

On February 19, 2004, after a second jury trial, Scott was acquitted of intimidation but was found guilty of attempted battery by means of a deadly weapon. On appeal, we found that the trial court had erroneously dismissed a juror during jury deliberations and, therefore, reversed the conviction and remanded for retrial.

On November 8–9, 2005, Scott was again tried by jury on the charge that he committed attempted battery by means of a deadly weapon. The jury returned a guilty verdict, and the trial court entered a judgment of conviction.

According to Scott, the "evidence presented by the State in each trial was essentially the same." Scott's Br. at 6. On January 1, 2000, two officers of the Anderson Police Department—Chad Boynton and Trent Chamberlin—were outside Scott's residence when Mr. Andrews came to the residence to retrieve the car that Mrs. Andrews had left there. At the end of Scott's driveway, Scott engaged in a verbal exchange with Mr. Andrews. Scott made several loud, angry threats to Mr. Andrews that the officers believed to constitute the criminal offense of intimidation. Boynton informed Scott that "he was under arrest for intimidation." (Tr. 271). Rather than submit to Boynton's command that he was under arrest, Scott turned around and walked away. Boynton "several times told him to stop" and "that he was under arrest," but Scott continued to

walk up the driveway away from Boynton and toward his house. (Tr. 227).

Boynton and Chamberlin followed. Scott walked through his carport to his backyard, where two very large barking dogs were chained. Scott positioned himself behind the first dog, a German Shepherd–Rottweiler mix weighing approximately 110 pounds, grabbed the chain or collar around its neck, pulled the dog onto its hind legs, shook it and kneed it in the ribs. Boynton ordered Scott to get away from the dog. Scott warned the officers that "if [they] didn't get out of there he was gonna turn the dogs loose on [them]." (Tr. 232). Scott then "shoved [the first dog] towards [them]." *Id.* The dog's "ears were back," and it charged toward the officers in "attack mode," running "full speed, growling, snarling, and hunched down like it was gonna jump" at them. (Tr. 233). Chamberlin pepper-sprayed the dog.

As soon as Scott released the first dog, he ran behind the second dog—which "appeared to be full blooded Rottweiler." (Tr. 236). Scott "began agitating the second dog in the same fashion that he had the first dog" and then "turned that dog loose." (Tr. 273, 235). In the meantime, the first dog appeared to have recovered from the pepper spray. At this point, both dogs were "charging" at the officers. (Tr. 273). Chamberlin shot both dogs.

After Scott released the second dog, he turned and ran through his backyard, hopped over a fence, and continued running. The officers pursued Scott, continually ordering him to stop. The officers caught Scott, but he still refused to surrender to their authority and physically resisted.[2]

---

**1.** The "deadly weapon" alleged by the information was "two (2) dogs . . . readily capable of causing serious bodily injury." (App.15).

**2.** Details of Scott's resistance were presented at the first trial but not at the third.

## DECISION

Scott argues that his conviction of attempted battery by means of a deadly weapon must be reversed and vacated based upon the actual evidence test of Indiana's Double Jeopardy Clause.[3] Scott "makes no claim of double jeopardy violation based on the statutory elements analysis" but rather "a violation of double jeopardy based on the actual evidence analysis." Scott's Br. at 15. Specifically, Scott asserts that there is a

reasonable possibility that [the juries in both the first and third trial] used evidence pertaining to his behavior with his dogs as essential elements of resisting law enforcement to wit: forcibly interfering, resisting or obstructing in their duties to arrest, as well as using that behavior as a substantial step toward the commission of a battery with a deadly weapon to wit: the dogs.

Scott's Br. at 14. We cannot agree.

▮▮▮ Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression. *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999). Two offenses are "the 'same offense,'" so as to violate Indiana's Double Jeopardy Clause,

if, with respect to *either* the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Id.* (emphasis in original). Under the "actual evidence test," we examine the actual evidence presented at trial "to determine whether each challenged offense was established by separate and distinct facts." *Id.* at 53.

To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id.* The defendant must show "more than a remote or speculative possibility that the same facts were used." *Goldsberry v. State*, 821 N.E.2d 447, 459 (Ind.Ct.App. 2005). To determine what facts were used, "we consider the evidence, charging information, final jury instructions, and arguments of counsel." *Id.*

▮▮▮ The evidence revealed that Scott failed to comply with the initial commands of Boynton to stop because he was under

---

**3.** We do not agree with the State's assertion that Scott simply appeals the denial of his motion to dismiss—which was filed on November 14, 2005, after the jury's verdict on November 9th and sought dismissal based upon the actual evidence test of Indiana's Double Jeopardy Clause, as he argues on appeal. The motion was denied on November 14, 2005, the same day that the trial court sentenced Scott. Scott filed his notice of appeal on December 12, 2005. Thus, Scott's appeal does not appear limited to the issue of whether the trial court erred in denying his motion to dismiss.

Further, we review *de novo* whether a defendant's convictions violate the Double Jeopardy Clause of Indiana's Constitution. *Goldsberry v. State*, 821 N.E.2d 447, 458 (Ind.Ct. App.2005) (citing *Spears v. State*, 735 N.E.2d 1161, 1166 (Ind.2000)). For the purpose of such review, portions of the transcript from the first trial would seem to be properly submitted for our consideration.

Therefore, we do not find dispositive the State's argument that because this is an appeal of the denial of a motion to dismiss, and the portions of transcript from Scott's first trial were not presented to the trial court with Scott's motion to dismiss, the material must be stricken. Accordingly, we deny the State's motion to strike the material.

arrest for the offense of intimidation. The facts supporting the inference that he committed this offense continued until he reached his backyard. At that point, he acted to obtain a deadly weapon—by grabbing first one and then another chained, very large and vicious dog. Further, he used these weapons after further agitating them and then thrust the large, vicious, and agitated dogs, *i.e.*, the deadly weapons, toward the officers. This action of obtaining deadly weapons and using them are acts by Scott separate and apart from his initial acts of resisting arrest *and* from his subsequent actions—running away and then physically struggling with the officers who caught him.

For the resisting charge, the information alleged that on January 1, 2000, Scott "did knowingly and forcibly resist, obstruct or interfere with a law enforcement officer, to wit: Chad Boynton, ... lawfully engaged in the execution of his duties, to wit: attempting to place ... Scott under arrest." (App.14–15). For the attempted battery charge, the information alleged that on the same date, "Scott had knowingly engage[d] in conduct which constituted a substantial step toward the crime of battery, ... [when he] did cause two (2) dogs, ... animals readily capable of causing serious bodily injury, to charge at" Anderson Police Department Officers "in an attempt to commit battery upon" them. (App.15). Hence, the former information did not allege that Scott's forcible resisting of Boynton involved the dogs. However, the information alleging Scott's attempted battery with a deadly weapon expressly included (as the substantial attempt towards the offense of battery) his use of the two dogs "readily capable of causing serious bodily injury." *Id.*

At the first trial, the trial court instructed the jury that "a person who knowingly or intentionally forcible [sic] resists or ob-

structs or interferes with a law enforcement officer or a person is [sic] assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer, commits resisting law enforcement, a class A misdemeanor." (App.109). At the instant trial, the trial court instructed the jury that "a person attempts to commit a crime when acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward the commission of the crime." (App.337). It further defined battery as the knowing or intentional touching of "another person in a rude, insolent or angry manner" and that the "the offense is a class C felony if it ... is committed by means of a deadly weapon." *Id.* Also, the trial court instructed the jury that the definition of "deadly weapon" included "an animal that is readily capable of causing serious bodily injury and used in the commission of or attempted commission of a crime." (App.343). Thus, the jury instructions focused consideration of facts concerning Scott's use of the dogs, *i.e.*, the deadly weapons, to the charge of attempted battery.

Finally, we review the arguments of counsel. At the first trial, the State's final argument was that on the count of resisting law enforcement, if the jury believed that "Scott did fight with Officer Chamberlin when he caught up to him over on 10th Street after Mr. Scott had jumped the fence and taken off running, then he's guilty of this count." (App.100). The State emphasized testimony "that there was a fight, a literal fight between the officers and Mr. Scott ... to physically subdue Mr. Scott in order to get him into custody with Mr. Scott physically fighting him every inch of the way...." *Id.* The State made no mention of acts by Scott involving the dogs to support its argument that he had committed the offense of resisting law enforcement.

Based on the evidence, charging informations, final instructions, and arguments of counsel, we do not find it reasonably possible that the jury at the first trial convicted Scott of resisting law enforcement based upon the evidence that he agitated and pushed two very large and vicious dogs toward the officers. Therefore, Scott's claim that his conviction must be reversed based upon a violation of Indiana's Double Jeopardy Clause fails.

Affirmed.

NAJAM. J., and FRIEDLANDER, J., concur.