## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 29 2019, 10:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Deborah Markisohn<br>Indianapolis, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Erik J. Bryant<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Oshae Simmons,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 29, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2103<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Jeffrey Marchal, Magistrate<br><br>Trial Court Cause No.<br>49G06-1803-F5-9838 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Oshae Simmons (Simmons), appeals his conviction for attempted battery by means of a deadly weapon, a Level 5 felony, Ind. Code §§ 35-42-2-1(c)(1), -(g)(2); 35-41-5-1.

We affirm.

# ISSUE

Simmons presents three issues on appeal, which we consolidate and restate as: Whether the State produced sufficient evidence to prove beyond a reasonable doubt that Simmons attempted battery by means of a deadly weapon.

# FACTS AND PROCEDURAL HISTORY

On March 1, 2018, a team of police officers and United States marshals conducted surveillance of a home in the 2900 block of North Chester Street in Indianapolis attempting to serve an outstanding warrant on Simmons. Tim Leachman (Leachman) exited the home and stood on the porch talking on his cell phone. The officers believed that Leachman was Simmons, so they prepared to serve the warrant while he was outside on the porch. In the meantime, Carlos Moore (Moore) approached Leachman on foot and was talking to him from the sidewalk leading up to the home's front door.

Detective Garth Schwomeyer (Detective Schwomeyer) walked up quickly on Moore and Leachman with his rifle drawn to serve the warrant. Detective Schwomeyer was identifiable as a police officer by his tactical vest which bore

the word "Police" on its front and by his badge which hung around his neck. Detective Schwomeyer ordered Leachman and Moore to the ground. Moore immediately complied; however, Leachman did not. Leachman stepped off of the porch and began walking away, putting his hands in and out of his pockets, and daring the officers to come get him and shoot him. Detective Schwomeyer believed that Leachman was engaging in this behavior as a delay tactic.

[6] Detective Schwomeyer closed in on Leachman and reached the sidewalk leading up to the home such that he was directly facing the front door of the home. Detective Schwomeyer heard the front door open and turned to assess the threat. Detective Schwomeyer observed Simmons open the door, releasing a large pit bull that charged directly at Detective Schwomeyer's left thigh. After releasing the dog, Simmons immediately closed the door and locked it. Detective Schwomeyer attempted to retreat but was unable to out-maneuver the dog. Detective Schwomeyer shot and killed the pit bull in order to prevent being bitten. Simmons remained in the home despite being directed over a loud speaker to come out and surrender himself. Simmons ultimately exited the home when a SWAT team arrived.

[7] On March 22, 2018, the State filed an Information, charging Simmons with attempted battery by means of a deadly weapon. On July 9, 2018, in a separate Information, the State alleged that Simmons was an habitual offender. On July 18, 2018, the trial court conducted Simmons' bench trial. Detective Schwomeyer testified that approximately ten seconds elapsed between the time he approached the home to serve the warrant and the time he shot the dog.

Another officer with training and experience in handling dogs testified that the dog shot by Detective Schwomeyer was a large pit bull with strong jaws that was capable of injuring a person because pit bulls bite down, lock on, and do not let go.

[8] The trial court found Simmons guilty of attempted battery by means of a deadly weapon. On August 8, 2018, Simmons pleaded guilty to being an habitual offender. Following his plea, the trial court sentenced him to two years for the battery, enhanced by two years for being an habitual offender, with two years suspended to probation.

[9] Simmons now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[10] Simmons challenges the evidence supporting his conviction for attempted battery by means of a deadly weapon. It is well-established that when we review the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is not our role as an appellate court to assess witness credibility or to weigh the evidence. *Id*. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*.

[11] The State charged Simmons with attempted battery by means of a deadly weapon in relevant part as follows:

> [Simmons] did attempt to commit the felony of [b]attery by
> [m]eans of a [d]eadly [w]eapon, which is to knowingly touch
> [Detective Schwomeyer] in a rude, insolent, or angry manner,
> said touching being committed with a deadly weapon, to wit, a
> dog, by engaging in conduct, that is, allowing a dog to attack
> [Detective Schwomeyer], that constituted a substantial step
> toward the commission of said crime[.]

(Appellant's App. Vol. II, p. 16).[1] Thus, in order to prove the offense, the State was required to establish that Simmons knowingly took a substantial step—namely, allowing the dog to attack—toward touching Detective Schwomeyer in a rude, insolent, or angry manner with a deadly weapon, the dog. A person acts knowingly "if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b).

[12] A person attempts a crime, when, acting with the same culpability necessary for the offense, he engages in conduct constituting a "substantial step" toward the commission of the crime. I.C. § 35-41-5-1(a). This substantial step requirement is a minimal one which is defined as any overt act in furtherance of a crime. *B.T.E. v. State*, 108 N.E.3d 322, 327 (Ind. 2018). However, the overt act must be more than mere preparation. *Id.* The focus is on what the defendant has completed, not on what was left to be done. *Id.* Whether a substantial step toward the commission of a crime has occurred is a question to be determined by the fact-finder at trial, based on the particular circumstances of the case. *Id.*

---

[1] All references are to Appellant's Public Appendix.

Factors to be considered in rendering this determination include "(1) whether the defendant's acts strongly corroborate his criminal intent; (2) the severity of the charged crime; (3) the proximity to the underlying crime; (4) the examples listed in Model Penal Code section 5.01(2); and (5) whether the defendant's multiple acts, viewed together, indicate he attempted a crime." *Id*. at 328.

[13] Here, the evidence showed that while Detective Schwomeyer was attempting to take Leachman into custody, Detective Schwomeyer observed Simmons open the front door to the home, allow the pit bull to exit, and then shut and lock the door again. The dog charged directly at Detective Schwomeyer. Simmons did not follow the dog out to attempt to restrain it. Indeed, Simmons stayed in the home, only obeying orders to come out when threatened with the SWAT team's arrival. This evidence permitted a reasonable inference that Simmons' release of the pit bull was not accidental and that Simmons was aware of a high probability that he was allowing the pit bull to attack Detective Schwomeyer when he opened the door.

[14] Applying the *B.T.E.* factors, we also conclude that Simmons took the requisite substantial step toward the commission of the battery. Apart from the evidence that corroborated Simmons' knowing intent to allow the dog to attack, the offense charged was battery by means of a deadly weapon. This was a moderately-severe offense which we conclude permitted a finding of a substantial step based on Simmons' act of opening the door to release the dog, even though the same act may not have justified the finding for a less-severe offense. *See id*. at 328. Regarding his proximity to the offense, Simmons was

just steps away from Detective Schwomeyer when he released the pit bull and mere seconds away from the dog actually biting, which made it more likely that he was guilty of the attempted battery. *See id*. at 329. While we acknowledge that none of the Model Penal Code examples such as lying in wait, enticing the victim, or reconnaissance of the location of the crime apply here, we conclude that the totality of the circumstances demonstrated Simmons' intent to batter Detective Schwomeyer and an overt act in furtherance of that intent. *Id*. Simmons, who presumably knew he had a warrant out for his arrest, released the dog just as Detective Schwomeyer, who was readily identifiable as a police officer, was mistakenly attempting to serve that warrant on Leachman. Simmons' failure to follow the dog out to restrain it once it was released and the fact that he remained in the residence were strongly corroborative of his intent to commit the battery as a diversion or to avoid his own arrest. The attempt to batter would have been a completed battery if Detective Schwomeyer tragically had not been forced to shoot the dog.

[15] Simmons argues that his conviction cannot stand because the State merely alleged that he committed a negligent act for "allowing a dog to attack" Detective Schwomeyer, as charged in the Information. (Appellant's App. Vol. II, p. 16). Simmons contends that this "was simply not criminal conduct." (Appellant's Br. p. 13). Simmons did not seek dismissal of the Information on this basis and, therefore, has waived his claim. *Hayden v. State*, 19 N.E.3d 831, 841 (Ind. Ct. App. 2014), *trans. denied*. However, even if he had not waived his

claim, it is not well-taken. A battery occurs when a person "knowingly or intentionally . . . touches another person in a rude, insolent, or angry manner[.]" I.C. § 35-42-2-1(c)(1). Here, the State charged Simmons with attempted battery for knowingly allowing the dog to attack, which was sufficient to allege the offense. *See id*.

[16] Simmons also argues that the State failed to prove that he took any "affirmative action to incite or encourage the dog to attack" or that the pit bull "acted at [] Simmons' direction rather than of her own accord." (Appellant's Br. p. 15). He contrasts the circumstances of his case to those of *Scott v. State*, 859 N.E.2d 749 (Ind. Ct. App. 2007), in which this court affirmed Scott's conviction for attempted battery by means of a deadly weapon where he provoked his two large dogs by pulling them up onto their hind legs, shaking them, and kneeing them in the ribs before turning the dogs onto police officers. *Id*. at 751. However, in *Scott*, the issue on appeal was whether his battery conviction violated double jeopardy principles, not a challenge to the sufficiency of the evidence, and thus that decision did not establish a threshold or mandatory showing for proving the offense. *Id*. at 752-54. The State was required to show that Simmons completed an overt act in furtherance of the battery by means of a deadly weapon. *See B.T.E.*, 108 N.E.3d at 327. The evidence supported the trial court's reasonable conclusion that Simmons accomplished this overt act

when he opened the front door and released the pit bull. This was not a case wherein the pit bull opened the front door of its own volition.

[17] Simmons' argument that the State failed to prove that he used the pit bull as a deadly weapon is equally unavailing. Simmons contention on this point is that the State was required to show, but did not, that he knew in advance that the pit bull had aggressive or violent tendencies. However, a deadly weapon is defined in relevant part as "[a]n animal . . . that is: (A) readily capable of causing serious bodily injury; and (B) used in the . . . attempted commission of a crime." I.C. § 35-31.5-2-86(3). Evidence was presented at trial that the pit bull at issue was a large dog with powerful jaws that was capable of clamping down on Detective Schwomeyer. This evidence supported the trial court's reasonable conclusion that Simmons was aware of a high probability that the pit bull he released on Detective Schwomeyer was readily capable of causing serious bodily injury, and, as we have already determined, the dog was knowingly used in the attempted battery.

[18] Lastly, Simmons contends that the State did not show that he engaged in conduct constituting a substantial step toward the commission of a battery by means of a deadly weapon because none of the factors enumerated by our supreme court in *B.T.E.* were proven at trial or were adequate to sustain his conviction. Having already determined that the balance of those factors supported the trial court's judgment, we pause only to address Simmons'

argument that his actions were inadequately corroborative of his intent. In order for an alleged act to constitute a substantial step toward the commission of a crime, it "must be strongly corroborative of the firmness of the defendant's criminal intent." *B.T.E.*, 108 N.E.3d at 328 (quotation omitted). The *B.T.E.* court noted that

> [t]he actus reus of an attempt to commit a specific crime is constituted when the accused person does an act which is a step towards the commission of the specific crime, *and the doing of such act can have no other purpose than the commission of that specific crime.*

*Id.* (quoting Wayne R. LaFave, *Substantive Criminal Law Vol. 2* § 11.4(d) (3d ed. 2017), in turn quoting J.W. Cecil Turner, *Attempts to Commit Crimes*, 5 Cambridge L.J. 230, 236 (1934)) (emphasis added). Simmons then posits that his act of opening a door could have had many purposes other than the commission of the offense, although he does not elucidate what those other purposes could have been. Be that as it may, we do not understand *B.T.E.* to hold that a conviction for an attempt offense may not be upheld if there is any other way to characterize the evidence on appeal apart from that which supports the fact-finder's determination. To so hold would be contrary to our long-standing standard of review for sufficiency of the evidence cases, wherein we are required only to consider those reasonable inferences that support the verdict or judgment. *See Drane*, 867 N.E.2d at 146. Here, as outlined above, the State established Simmons' knowing intent to take a substantial step toward

battering Detective Schwomeyer with a deadly weapon, which was sufficient to sustain the conviction.

## CONCLUSION

Based on the foregoing, we conclude that the State proved beyond a reasonable doubt that Simmons knowingly took a substantial step toward battering Detective Schwomeyer by means of a pit bull.

Affirmed.

Bailey, J. and Pyle, J. concur