

**FILED**

Sep 10 2019, 8:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bruce A. Sorenson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 10, 2019<br><br>Court of Appeals Case No.<br>19A-CR-565<br><br>Appeal from the Rush Circuit<br>Court<br><br>The Honorable David E. Northam,<br>Judge<br><br>Trial Court Cause No.<br>70C01-1602-FA-134 |

**Najam, Judge.**

## Statement of the Case

[1] Bruce A. Sorenson appeals one of his fourteen convictions and his 590-year aggregate sentence after he sexually assaulted two of his daughters nearly every day from the time they were in diapers to their mid-teens and also sexually

assaulted one of their childhood friends.  He raises the following three issues for our review:

1.      Whether the State presented sufficient evidence to show that Sorenson committed sexual misconduct with a minor, as alleged in Count 11.

2.      Whether the trial court erred when it determined that Sorenson was a credit-restricted felon and, as such, that he can earn only one day of good-time credit for every six days served.

3.      Whether his 590-year sentence is inappropriate in light of the nature of the offenses and his character.

[2]     We reverse Sorenson's conviction under Count 11, the twenty-year sentence that was imposed on Count 11, and the trial court's application of the incorrect credit-time statutes against all of Sorenson's sentences except his sentence on Count 3.  As for the balance of Sorenson's sentence, 570 years executed, we cannot say that it is inappropriate in light of the nature of the offenses and Sorenson's character.

## Facts and Procedural History

[3]     When he was twenty-seven years old in March of 1995, Sorenson became the father of his first daughter, T.S.  Eighteen months later, in September of 1996, he became the father of his second daughter, J.S.  Sorenson, the two daughters, and the rest of the family lived in Rushville, initially on First Street but later, in the early 2000s, they moved to Third Street.

## T.S.

[4] When T.S. "was in diapers," she would later recall, Sorenson "th[rew] off" her diaper in her "parent's bedroom" at the First Street house. Tr. Vol. 3 at 89-90. T.S. "remember[e]d it very vividly": the diaper "smacked against the wall between the dresser and the closet, and then [Sorenson] molested [her]" by inserting his penis into her anus. *Id.* at 91. "[T]here [we]re other times" that she also remembered in that bedroom, such as a time when he "would have [her] on his waterbed and . . . they had a headboard that had a mirror and . . . cubbies . . . and if [she] ever picked [her] head up he would shove [her] head back down in the pillow" because "he obviously didn't want [her] to see" that he was "[h]aving sex with [her] anally." *Id.*

[5] Sorenson also molested T.S. in the bathroom at the First Street house. He "would have [T.S.] bend over the toilet and he would molest [her] anally, and . . . the same with [her] bedroom." *Id.* at 92. Sorenson would also "threaten [T.S.] if [she] didn't stop crying" or tell her that "he was go[ing to] go and get [J.S.] and do it to [her] instead . . . ." *Id.* Although T.S. could not recall a specific number of times Sorenson had molested her at the First Street house, she "used to think that the amount [of] freckles [she] had on [her] face and [her] body was the amount of times [Sorenson had] molested" her there. *Id.* at 91.

[6] The molestations continued after the family had moved to the Third Street house. Sorenson would "sneak[] into [her] bedroom at night" and sodomize T.S. in her bunk bed. *Id.* at 93. He "would take [her] into the bathroom

and . . . have [her] lean over the toilet or the bathtub" to "have sex with [her] anally." *Id.* He would have her put a towel down on his bed, "lean [her] over the side of the bed[,] and . . . have sex with [her] anally" there. *Id.* at 94. At least once, T.S. "wouldn't stop crying" during Sorenson's molestation of her, and he "punched her in the back," which "hurt." *Id.* Sorenson's attacks on T.S. gave her hemorrhoids on at least one occasion and made defecation difficult for her.

[7] Around 2006 or 2007, while at the house of a family friend, Sorenson attempted to sodomize T.S. but T.S. "begged him to vaginally molest [her] instead of anally" because "it hurt less." *Id.* at 96. Although she later could not recall another specific instance of Sorenson molesting her vaginally, she "assum[ed] it [had] happened" because, even though she was only eleven or twelve during the incident at the friend's house, she knew "it didn't hurt as bad when it was vaginal as when it was anal." *Id.* Sorenson told T.S. to never tell anyone of the molestations or he would hurt T.S.'s mother, sister, or himself. Around the time T.S. turned fifteen years old, Sorenson stopped molesting her.

### *J.S.*

[8] J.S. lived at the First Street house until she was about four years old. Although very young at the time, J.S. later would be able to recall at least two occasions at the First Street house in which Sorenson had molested her. In particular, she remembered that, on one occasion, Sorenson had called her into his bedroom, exposed her to pornography on a television in the room, and then "bent [her]

over the bed" such that she was "face down" on the bed "faced toward the wall." *Id.* at 47. Sorenson then anally penetrated J.S. with his penis.

[9]  On a separate occasion, J.S. and T.S. "ran into" their parent's bedroom late at night because "it was thundering." *Id.* at 48. Their mother was in the bed, but Sorenson "sent mom to the store to get something." *Id.* Once she had left, Sorenson sodomized J.S. In doing so, he told her that, "if [she] was good," she would get a "lunchable" treat later. *Id.*

[10]  One day after the family had moved to the Third Street home, Sorenson took J.S. to the grocery store. But they did not go back to the family home afterward. Instead, Sorenson took J.S. to a grandmother's house in Rushville. As soon as they were through the threshold of the grandmother's house, Sorenson "just bent [J.S.] over right there and did anal penetration" with his penis. *Id.* at 49. On another occasion at a grandmother's house, Sorenson sodomized J.S. using some leftover "bacon grease as lubrication." *Id.* at 61.

[11]  J.S. lived at the Third Street home with Sorenson for about ten years. During that time, Sorenson sodomized J.S. "[j]ust about every day." *Id.* at 51-52. On one occasion, J.S. was lying down on her bed when her mother and T.S. "went to the store to go get dinner." *Id.* at 54. Once they were gone, Sorenson "came in the bedroom and . . . took [J.S.] to the bathroom," where he anally penetrated her. *Id.* at 54-55. He then "sent [her] back to the bedroom to act like [she] was still l[ying] down" when her mother and T.S. returned. *Id.* at 55.

[12] But most of Sorenson's abuse of J.S. at the Third Street home occurred in Sorenson's bedroom. "[I]t was always anal penetration." *Id.* at 56. J.S. was nearly always "bent over[] on the bed," with her feet only "kind of touching the floor" but "not so much" given her size. *Id.* During the abuse, Sorenson would "always watch out the window . . . to see if mom would show up." *Id.* J.S. could sometimes tell when Sorenson was about to molest her based on "[t]he way he would look" at her, which was like

> when you haven't [eaten] for a whole day, and you get home
> from work, and you have this plate set down in front of you, and
> you feel your stomach growling, and your mouth starts watering;
> you get that look in your eyes . . . . [H]e had that same look.

*Id.* at 59.

[13] During one of Sorenson's last molestations of J.S., around the time she was fourteen or slightly older, J.S. remembered a younger sibling being in her parent's bedroom "in a bouncy seat." *Id.* at 57. J.S. remembered "seeing her . . . little sister's face" during the molestation. *Id.* J.S. felt "broke[n]" in that moment and resolved that she did not "want that to happen" to her little sister. *Id.* at 57-58. J.S. then tried to tell her mother about the molestations, but her mother "didn't have a reaction like [J.S.] expected. She was too calm about it. It was like she already knew." *Id.* at 58. J.S.'s mother also "tr[ied] to talk [J.S.] out of" going to the police. *Id.* J.S. then began telling Sorenson "no" when he would try to molest her, and the molestations ceased. *Id.* at 59, 67.

## C.N.

While living at the Third Street house, J.S. was friends with C.N., a girl who also lived on Third Street in Rushville and was a few months younger than J.S. C.N. stayed the night at the Sorensons' Third Street house on two occasions. On both occasions, Sorenson molested her.

The first time it happened, C.N. remembered "w[aking] up to [her] pants down" and Sorenson "going inside [her] . . . vagina" with "[h]is penis." *Id.* at 78. C.N. was about eight years old at the time. She was lying "[o]n [her] side, facing the wall" in J.S.'s bedroom, and could see "toys and clothes and the wall." *Id.* When Sorenson finished, he told her, "Oh, I thought you were my wife." *Id.* at 80. He then walked away and C.N. put her clothes back on. The second incident was nearly identical to the first.

On a separate occasion about one year later, C.N. went camping with J.S. and her family. T.S., J.S., and C.N. all went inside a nearby barn and then up into the barn loft. Sorenson followed the girls there and then molested all three of them. He "took [C.N.'s] pants down, bent [her] over," and vaginally penetrated her with his penis. *Id.* at 81. He then anally penetrated his daughters. Sorenson then "just walked away" and "went back to the campsite." *Id.* at 82.

## Criminal Proceedings

Around February of 2016, J.S., now nineteen years old, went to the Rushville Police Department to report Sorenson's molestations of her, T.S., and C.N.

Officers contacted T.S. and C.N., who corroborated J.S.'s report and provided their own details to officers.

[18] The State later filed an amended information against Sorenson that alleged as follows:

- Count 1, child molesting, as a Class A felony, based on Sorenson's anal penetration of J.S. at a grandmother's house between September 5, 2000, and September 4, 2010, when J.S. was under fourteen years of age;
- Count 2, child molesting, as a Class A felony, based on Sorenson's anal penetration of J.S. at the First Street house, when J.S. was under fourteen years of age;
- Count 3, child molesting, as a Class A felony, based on Sorenson's anal penetration of J.S. at the Third Street house, when J.S. was under fourteen years of age;
- Count 4, child molesting, as a Class A felony, based on Sorenson's anal penetration of J.S. during the camping trip, when J.S. was under fourteen years of age;
- Count 5, sexual misconduct with a minor, as a Class B felony, based on Sorenson's anal penetration of J.S. at the Third Street house during a time frame in which she was older than fourteen years of age but under sixteen;
- Count 6, child molesting, as a Class A felony, based on Sorenson's sexual intercourse with T.S. at the First Street house, when T.S. was under fourteen years of age;
- Count 7, child molesting, as a Class A felony, based on Sorenson's anal penetration of T.S. at the First Street house, when T.S. was under fourteen years of age;
- Count 8, child molesting, as a Class A felony, based on Sorenson's sexual intercourse with T.S. at the Third Street house, when T.S. was under fourteen years of age;
- Count 9, child molesting, as a Class A felony, based on Sorenson's anal penetration of T.S. at the Third Street house, when T.S. was under fourteen years of age;

- Count 10, child molesting, as a Class A felony, based on Sorenson's anal penetration of T.S. during the camping trip, when T.S. was under fourteen years of age;
- Count 11, sexual misconduct with a minor, as a Class B felony, based on Sorenson's sexual intercourse with T.S. during a time frame in which she was older than fourteen years of age but under sixteen;
- Count 12, sexual misconduct with a minor, as a Class B felony, based on Sorenson's anal penetration of T.S. during a time frame in which she was older than fourteen years of age but under sixteen;
- Count 13, child molesting, as a Class A felony, based on Sorenson's sexual intercourse with C.N. during the camping trip, when C.N. was under fourteen years of age;
- Count 14, child molesting, as a Class A felony, based on Sorenson's sexual intercourse with C.N. at the Third Street house, when C.N. was under fourteen years of age;
- Count 15, child molesting, as a Class C felony, based on Sorenson having fondled or touched C.N. at the Third Street house with the intent to arouse or satisfy his or C.N.'s sexual desires when she was under fourteen years of age.

At his ensuing jury trial, T.S., J.S., and C.N. each testified against Sorenson. The jury then found him guilty on Counts 1 through 14 but not guilty on Count 15.

[19] Following a sentencing hearing, the trial court announced Sorenson's sentence as follows:

> [T]here is substantial evidence . . . to support . . . the aggravating circumstances of the significant harm that . . . took place as a result of . . . these acts . . . . [T]he aggravator of significant harm is a very substantial one to me. The . . . criminal history of the Defendant . . . , although it exists, the Court didn't consider that a substantial aggravator . . . . The issue of the age of the . . . children, . . . the ages . . . are included in the actual elements of

the crimes[;] however, the Court will note that these actions, as related to [J.S. and T.S.] did start at a very young age . . . very much[] substantially younger than fourteen, . . . making the young age an aggravator officially, I think it cannot be ignored that these children were extremely young when it commenced. And . . . again, this was a lifetime of . . . pain and suffering and I think [the ages of the victims] needs to be a general aggravator . . . . [S]ome of these counts . . . t[ook] place in front of other children . . . .

* * *

. . . All of the counts that involve the [camping trip] were not only done in the presence of each of the other girls, the manner in which those acts occurred in and of themselves . . . was abusing the . . . three children . . . together. I find that to be an aggravator. The . . . threat . . . from the trusted individual, however, I don't, [as] again that occurs often in . . . these scenarios, and . . . I would not consider it a substantial aggravator. The leaving the jurisdiction [after charges were filed], again, [is] an aggravator but . . . I'm not considering [it] a substantial aggravator . . . . The biggie, for me, [is] the position of trust. . . .

* * *

. . . I cannot fathom . . . a father, the person that the daughters can turn to[,] a person of love, a person of trust . . . , this is a very, very substantial aggravator. As far as the mitigators, the . . . reference to being remorseful, no, . . . no, he was not remorseful. On the other hand, he had pl[eaded] not guilty and . . . certainly there was reference some time ago to a suicide. The ADHD issues . . . I just do not find there is any factual basis for the mitigator of . . . mental health. So that brings us to the

actual sentencing. . . . I find this to be the worst of the worst . . . .
I believe this is the worst of the worst . . . .

*Id.* at 192-95. The court then sentenced Sorenson to the maximum term for his convictions on Counts 1 through 12 and to slightly less than the maximum terms for his convictions on Counts 13 and 14, the two convictions involving C.N.[1] The court ordered each sentence to run consecutively and to be fully executed for an aggregate, executed term of 590 years in the Department of Correction. The court also found Sorenson to be a credit-restricted felon such that he may receive only one day of good-time credit for every six days served. Appellant's App. Vol. 3 at 23. This appeal ensued.

## Discussion and Decision

### *Issue One: Sufficiency of the Evidence Supporting Count 11*

[20] Sorenson first asserts on appeal that the State failed to present sufficient evidence to support his conviction on Count 11, which, again, charged him with sexual misconduct with a minor, as a Class B felony, based on his sexual intercourse with T.S. during a time frame in which she was older than fourteen years of age but under sixteen. That the victim was "at least (14) years of age but less than sixteen (16) years of age" is a specific element of the offense. Ind.

---

[1] Sorenson does not dispute that the following sentences applied to him: for a Class A felony conviction, a range of twenty to fifty years with an advisory term of thirty years; and for a Class B felony conviction, a range of six to twenty years with an advisory term of ten years. *See* Ind. Code §§ 35-50-2-4(a), -5(a) (2019). The trial court sentenced Sorenson to the maximum term for each of his Class A and Class B felony convictions, except for his Class A felony convictions on Counts 13 and 14, for which the court ordered Sorenson to serve forty years each.

Code § 35-42-4-9(a)(1) (2009). And "[s]exual intercourse" under that statute "means an act that includes any penetration of the female sex organ by the male sex organ." I.C. § 35-41-1-26 (2009). Sorenson does not challenge the sufficiency of the evidence underlying any of his other thirteen convictions.

[21] When reviewing the sufficiency of the evidence to support a conviction, we do not reweigh the evidence or judge witness credibility. *E.g.*, *B.T.E. v. State*, 108 N.E.3d 322, 326 (Ind. 2018). We consider only the evidence favorable to the verdict and the reasonable inferences supporting it. *Id.* We will affirm if a reasonable trier of fact could have concluded that the defendant was guilty beyond a reasonable doubt. *Id.*

[22] The only testimony provided by T.S. regarding acts of vaginal penetration performed by Sorenson is as follows:

> Q. When you were living at this house on Third Street, as you were growing up, were there ever times that he did things to you other than anal sex?
>
> A. Most of the time that I remember he did anal sex, but there is a possibility that he did vaginal, but . . . I cannot remember a time . . . right off the top of my head[] that he did at this house. Most of the time . . . it was anal.
>
> Q. Um, I didn't phrase that very well. Um, during the time period that you lived at the house on Third Street, but not in the house on Third Street?
>
> A. Oh, ok. Um, yeah there was one time that I do recollect. We were at my, we call him Uncle Tom but he's not really an

uncle, he's just like, a family friend . . . , and we were at his house, and . . . we were in his garage which is where . . . he had his bed . . . and my dad vaginally, I begged him to vaginally molest me instead of anally at this house.

Q.    Why did you beg him to do that?

A.    [Bec]ause it hurt less.

Q.    How did you know it hurt less?

A.    I'm assuming that it happened to me prior, I'm not [one] hundred percent sure.  I just know it didn't . . . hurt as bad when it was vaginal as when it was anal.

Q.    Do you remember how old you were when this happened in that garage?

A.    I am not [one] hundred percent sure.  I know I was maybe[] eleven, twelve. . . .

Tr. Vol. 3 at 96-97.

[23]    We are obliged to agree with Sorenson that the above testimony fails to demonstrate any acts of vaginal penetration after, at most, T.S. had turned twelve years old.  Accordingly, the State failed to present sufficient evidence to support Sorenson's conviction under Count 11, which, again, required the State to show that Sorenson had vaginally penetrated T.S. when she was between the ages of fourteen and sixteen.  *See* I.C. § 35-42-4-9(a)(1) (2009).  Thus, we reverse Sorenson's conviction and corresponding twenty-year sentence under Count 11.

## Issue Two: Credit-Restricted Status

[24] Sorenson next asserts on appeal that the trial court erred when it found him to be a credit-restricted felon under Indiana's post-July 1, 2008, statutory scheme for credit time. *See* I.C. §§ 35-50-6-0.1 to -8 (2019) ("the amended statutes"). In particular, Sorenson contends that the application of the amended statutes to him is an *ex post facto* violation.

[25] At all times relevant here prior to July 1, 2008, Indiana's statutory scheme on credit time generally provided that "[a] person imprisoned for a crime or imprisoned awaiting trial or sentencing is assigned to Class I," and a person assigned to Class I "earns one (1) day of credit time for each day he is imprisoned . . . ." I.C. §§ 35-50-6-3, -4 (1994). However, effective July 1, 2008, the General Assembly fundamentally changed our statutory scheme on credit time. In particular, our legislature added to that scheme a statute that defined a "credit restricted felon" in relevant part as follows:

> "Credit restricted felon" means a person who has been convicted of . . . :
>
> (1) Child molesting involving sexual intercourse or deviate sexual conduct . . . if:
>
> > (A) the offense is committed by a person at least twenty-one (21) years of age; and
>
> > (B) the victim is less than twelve (12) years of age.

I.C. § 35-41-1-5.5 (2008).[2] The 2008 amendments further provided that "[a] person who is a credit restricted felon and who is imprisoned for a crime or imprisoned awaiting trial or sentencing is initially assigned to Class IV," and a person assigned to Class IV "earns one (1) day of credit time for every six (6) days the person is imprisoned for a crime or confined awaiting trial or sentencing." I.C. §§ 35-50-6-3(d), -4(b) (2008).[3]

[26] We have repeatedly held that the retroactive application of the amended statutes to offenses that were committed prior to the effective date of the amendments is an *ex post facto* violation. *E.g.*, *Gaby v. State*, 949 N.E.2d 870, 882-83 (Ind. Ct. App. 2011) (noting that the State conceded as much); *Upton v. State*, 904 N.E.2d 700, 704-05 (Ind. Ct. App. 2009) (also noting that the State conceded as much), *trans. denied*. As we explained in *Gaby*, "the new statute[s] lengthened the period that the defendant was required to spend in prison, constricted the opportunity for early release, and thereby made the punishment for a crime committed before the [their] enactment more onerous than it had been at the time of enactment." 949 N.E.2d at 883.

[27] We are again obliged to agree with Sorenson that the trial court erred, at least in part, when it applied the amended statutes on credit time to each of his sentences. The offenses that occurred at the First Street house, on the camping

---

[2] This statute is now codified at Indiana Code Section 35-31.5-2-72 (2019).

[3] These statutes have since been further amended, *see* I.C. §§ 35-50-6-3 to -4 (2019), but those additional amendments are not relevant to our discussion in this appeal.

trip, and against C.N. were each committed prior to the effective date of the 2008 amendments. Further, T.S. was older than twelve prior to July 1, 2008, and two of Sorenson's other convictions are expressly based on T.S. and J.S. being between the ages of fourteen and sixteen. As such, those offenses could not be a basis for finding Sorenson to be a credit-restricted felon because the victims were not less than twelve years old at the time of those offenses. *See* I.C. § 35-41-1-5.5 (2008). Thus, the trial court erred when it concluded that the amended statutes applied to Sorenson and restricted Sorenson's accumulation of good-time credit against his sentences on Counts 2, 4, 5, 6, 7, 8, 9, 10, 12, 13, and 14.

[28] We also agree with Sorenson that the State failed to prove that the offense charged in Count 1 fell within the post-July 1, 2008, statutory scheme. That offense alleged that, sometime prior to J.S. turning fourteen in September of 2010, Sorenson had sodomized her at a grandmother's house. J.S.'s testimony is not specific as to when that incident occurred; she stated only that it occurred sometime before she turned fourteen.

[29] But J.S. turned twelve in September of 2008, and, again, the victim must have been less than twelve at the time of the offense in order for Sorenson to be a credit-restricted felon based on that offense. Accordingly, to show that Sorenson was a credit-restricted felon for the offense charged in Count 1, the State needed to present some evidence that the act underlying that charge occurred specifically between July 1, 2008, the effective date of the amended statutes, and J.S.'s twelfth birthday some two months later. The State did not

do this and instead presented only general testimony that this event might have occurred on any given day over a ten-year span of time. We conclude that the State's evidence, while sufficient to support Sorenson's conviction for this charge, was not sufficient to show that he is a credit-restricted felon based on Count 1. Thus, we also reverse the trial court's application of the amended statutes to Sorenson's sentence for this conviction.

[30] This leaves Sorenson's sentence for his conviction on Count 3. That Count generally alleged that Sorenson had sodomized J.S. at the Third Street house prior to J.S.'s fourteenth birthday. Again, to show that Sorenson was a credit-restricted felon, the State needed to present some specific evidence that this offense was committed between July 1, 2008, and J.S.'s twelfth birthday in September of 2008. The State did so for Count 3: in support of the State's charge, J.S. testified that Sorenson had sodomized her at the Third Street house "[j]ust about every day" over the course of a decade. Tr. Vol. 3 at 51-52; *see also Sharp v. State*, 970 N.E.2d 647, 648 n.1 (Ind. 2012). The State's evidence thus shows that the acts alleged in Count 3 fall within the post-July 1, 2008, statutory scheme for credit time, and we affirm the trial court's application of the amended statutes to Sorenson's sentence on Count 3 accordingly.

[31] The question remains whether the proper application of the amended statutes to Sorenson's sentence on Count 3 means that only the sentence on that Count is credit restricted or means that his entire, aggregate sentence is credit restricted. Our Supreme Court, in an appeal that did not involve an *ex post facto* issue, has held that, "[w]here a defendant is convicted of multiple offenses and sentenced

to consecutive terms, the jail credit is applied against the aggregate sentence." *Shane v. State*, 716 N.E.2d 391, 400 (Ind. 1999). However, the State cites no authority that applies that general rule when doing so would create an *ex post facto* application of the amended credit-time statutes to some of the sentences but not to others.

[32] We decline to extend *Shane*'s general pronouncement in such cases, as doing so would vitiate the *ex post facto* prohibition discussed above and, in effect, retroactively apply the amended statutes to offenses and sentences to which they cannot be applied. Accordingly, and in sum, we reverse the trial court's conclusion that Sorenson's accumulation of good-time credit against his sentences for his convictions on Counts 1, 2, 4, 5, 6, 7, 8, 9, 10, 12, 13, and 14 is limited by the amended statutes, and we remand with instructions for the trial court to apply the statutes in effect at the time Sorenson committed those offenses to determine Sorenson's appropriate, initial class for the accrual of credit time against those sentences. However, we affirm the trial court's conclusion that Sorenson is a credit-restricted felon for purposes of his sentence on Count 3 and the court's application of the amended statutes to Sorenson's sentence on that Count.

### Issue Three:  Indiana Appellate Rule 7(B)

[33] Last, Sorenson asserts that his total aggregate sentence is inappropriate in light of the nature of the offenses and his character. Although the trial court sentenced Sorenson to an aggregate term of 590 years, in light of our holding in

Issue One above we consider this argument against his remaining 570-year aggregate sentence.

[34] As our Supreme Court has made clear:

> The Indiana Constitution authorizes appellate review and revision of a trial court's sentencing decision. Ind. Const. art. 7, §§ 4, 6; *Serino v. State*, 798 N.E.2d 852, 856 (Ind. 2003). This authority is implemented through Indiana Appellate Rule 7(B), which permits an appellate court to revise a sentence if, after due consideration of the trial court's decision, the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *Serino*, 798 N.E.2d at 856. The principal role of such review is to attempt to leaven the outliers. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The burden is on the defendant to persuade the reviewing court that the sentence is inappropriate. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

*Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018) (per curiam).

[35] Indiana Appellate Rule 7(B) is a "rare" avenue for appellate relief that is reserved "for exceptional cases." *Livingston v. State*, 113 N.E.3d 611, 612-13 (Ind. 2018) (per curiam). Even with Rule 7(B), "[s]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015) (quoting *Cardwell*, 895 N.E.2d at 1222). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples

of good character).” *Id.* Absent such a “sufficiently compelling” evidentiary basis, we will not “override the decision of . . . the trial court.” *Id.*

[36] There is no such evidence in this case. Rather, the evidence here is clear: Sorenson committed despicable acts against two of his daughters nearly every day for a decade or more and against one of their childhood friends, and he has a despicable character. There is no evidence whatsoever, let alone “compelling evidence,” that portrays “in a positive light the nature of the offense[s].” *Id.* There is likewise no evidence whatsoever of “substantial virtuous traits” held by Sorenson, of “persistent examples of good character” he might have, or of anything analogous to either of those character traits. *Id.* We conclude that Sorenson has failed to carry his burden of persuasion on appeal to meet the high and exceptional bar of appellate relief under Rule 7(B).

[37] Still, Sorenson asserts that his 570-year aggregate sentence is an “outlier” and cites as support three cases in which defendants convicted of multiple offenses of child molestation were sentenced to 125 years or fewer. Appellant’s Br. at 17-19. As the State puts it, “Sorenson does not contest that the nature of his offense[s] or his character merit a lesser sentence; he merely claims that [his total aggregate] sentence is too severe . . . .” Appellee’s Br. at 30. We understand Sorenson’s argument that his sentence might not have a clear analog in our case law—but neither do the extreme facts underlying his convictions. Indeed, Sorenson’s argument on this issue is, in essence, that our trial courts must tailor sentences to case law facts rather than to the facts before them.

[38] Sorenson is incorrect. Our trial courts are broadly authorized to tailor sentences to the facts and circumstances before them. *E.g.*, *Stephenson*, 29 N.E.3d at 122. And, while we will revise a sentence that is an outlier, the sentence must also be inappropriate in light of the nature of the offenses and the defendant's character as demonstrated by the evidence of record. Ind. Appellate Rule 7(B); *Stephenson*, 29 N.E.3d at 122. "[W]e concentrate less on comparing the facts of the case at issue to others . . . and more on focusing on the nature, extent, and depravity of the offense . . . and what it reveals about the defendant's character." *Guzman v. State*, 985 N.E.2d 1125, 1134 (Ind. Ct. App. 2013) (cleaned up). Again, as Sorenson makes no argument on appeal that his sentence is inappropriate in light of the evidence of record, he has not met his burden on appeal to show that his sentence is inappropriate.

[39] In any event, Sorenson's request for a downward revision of his term of years is an academic one. Sorenson is currently fifty-two years old. Whatever actual number of years the trial court ordered him to serve is less meaningful than the outcome that term will unquestionably achieve: Sorenson's permanent removal from society. There is no lower number of years we would impose that would alter that outcome. Accordingly, we affirm his sentence.

## Conclusion

[40] In sum, we reverse Sorenson's conviction on Count 11 and the twenty-year sentence associated with that conviction. We also reverse the trial court's application of the amended statutory scheme on credit time to Sorenson's sentences for his convictions under Counts 1, 2, 4 through 10, and 12 through

14, and we remand with instructions for the court to determine the proper initial credit time, if any, that should apply to Sorenson's sentences for his convictions on those counts based on the statutes in effect at the time he committed those offenses. Finally, we affirm the trial court's imposition of an aggregate sentence of 570 years executed.

[41] Affirmed in part, reversed in part, and remanded with instructions.

Bailey, J., and May, J., concur.